PEOPLE v BUNTING

Docket No. 79384. Submitted April 17, 1985, at Detroit.—Decided June 25, 1985.

Merle K. Bunting was convicted of criminal sexual conduct in the first degree by a jury in Washtenaw Circuit Court and was sentenced, Henry T. Conlin, J. Defendant appealed. *Held:*

The admission into evidence of the results of electrophoresis testing was not error.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — ELECTROPHORESIS TEST RESULTS.

The admission into evidence of the results of electrophoresis testing is permissible in a criminal trial where the prosecution meets its burden of establishing the general scientific acceptance of electrophoresis.

2. CRIMINAL LAW — EVIDENCE — PROBATIVE EVIDENCE — UNFAIR PREJUDICE.

Evidence of guilt is always prejudicial; probative evidence, therefore, should be excluded only where it would unfairly prejudice the defendant (MRE 403).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Joseph F. Burke,* Assistant Prosecuting Attorney, for the people.

*Barry M. Levine,* for defendant on appeal.

Before: GRIBBS,P.J., and T. M. BURNS and R. B. MARTIN,* JJ.

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Evidence §§ 818 *et seq.*
See the annotations in the ALR3d/4th Quick Index under topic Experiments or Tests.
[2] Am Jur 2d, Evidence §§ 1124 *et seq.*
* Retired circuit court judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant was convicted by a jury of criminal sexual conduct in the first degree, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f), and was sentenced to a term of from 16 to 35 years in prison. He now appeals as of right.

Defendant's sole claim on appeal is that the admission into evidence of the results of electrophoesis testing was error so prejudicial as to require reversal of his conviction. We find this argument without merit and affirm defendant's conviction.

At trial, Dr. Henry Gershowitz, a qualified expert, testified out of the presence of the jury about the use of electrophoresis for identification of particular types of serum proteins and enzymes to classify people into certain distinct populations which possess these genetic qualities. It was Dr. Gershowitz's opinion that electrophoresis has been generally accepted in the scientific community for well over 20 years. Defense counsel neither cross-examined Dr. Gershowitz nor objected to any of his testimony.

Subsequently, Charles Barna, qualified as an expert in forensic serology, testified to the results of the electrophoresis testing he did on bloodstains from the complainant's bed sheet, her T-shirt, defendant's plaid shirt, and a piece of bloodstained glass from a window broken by the assailant.

The bloodstain on the victim's T-shirt, which she had worn the night of the attack, matched all of defendant's genetic markers and did not match either the victim's or her boyfriend's markers. Only .68 percent of the population, or 1 in 147 people, could have contributed that bloodstain. The bloodstain on the victim's bed sheet matched the genetic markings of defendant and did not match those of either the victim or her boyfriend. It was determined that .87 percent, 1 out of 115

people, could have deposited that bloodstain. The bloodstain on defendant's shirt, which the victim testified defendant was wearing the night of the attack, did not match the victim's markings but did match defendant's. The tiny bloodstain on the piece of glass recovered from the victim's apartment indicated only that it was type A blood. Both defendant and the victim have type a blood.

Defense counsel did not object to the qualifications or testimony of either Dr. Gershowitz or Mr. Barna at trial. On appeal, however, defendant contends that their testimony is not sufficient to establish either the acceptance or reliability of electrophoresis test results. Defendant bases his argument on the Supreme Court's opinion in *People v Young,* 418 Mich 1; 340 NW2d 805 (1983), in which the Court determined that it was error for the trial court to have accepted testimony on electrophoresis tests because there had been no prior determination that the electrophoresis procedure enjoys general scientific acceptance among impartial and disinterested experts. The Court remanded *Young* to the trial court for a *Davis-Frye*[1] evidentiary hearing to determine whether the results of serological electrophoresis testing had achieved general scientific acceptance for reliability among impartial and disinterested experts. The Court retained jurisdiction, but has not as yet ruled on the results of the hearing.

Unlike the situation in *Young,* the prosecution here introduced Dr. Gershowitz to testify to the scientific reliability of electrophoresis testing. Dr. Gershowitz is a Professor of Human Genetics at the University of Michigan. He was not affiliated with any law enforcement agency and testified that he had no financial interest in the use of

---

[1] *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923).

serological electrophoresis testing. On this basis, we think his testimony that the electrophoresis procedure is generally accepted within the scientific community removed from this case the cause for concern expressed in *Young*. We agree with the prosecution that the question of admissibility of serological electrophoresis evidence has not been temporarily frozen pending the final outcome of *Young*. The prosecution in this case met its burden of establishing the general scientific acceptance of electrophoresis testing.

Defendant argues that, because the test results placed him in such a narrowly defined class, the testimony was highly prejudicial to his case. Evidence of guilt is always prejudicial. Only if it would *unfairly* prejudice defendant should probative evidence be excluded. MRE 403. This Court explored the question of unfair prejudice in admitting blood-typing evidence in *People v Goree,* 132 Mich App 693; 349 NW2d 220 (1984). The Court concluded that the only possible danger was that the probative value of blood-typing evidence would be artificially inflated by the prestige of the witnesses called to the stand to introduce it. The Court concluded that danger was not significant enough to warrant excluding evidence that the defendant was among the small class of serologically possible perpetrators.

We note in passing that, along with the highly probative results of the electrophoresis testing, the record yields plenty of other evidence establishing defendant's guilt. We find no abuse of discretion in the admission of the electrophoresis results.

Affirmed.