PEOPLE v SILER

Docket No. 97898. Submitted June 13, 1988, at Grand Rapids. Decided
September 7, 1988.

William H. Siler was convicted of second-degree murder following
a jury trial in the Kent Circuit Court, Stuart Hoffius, J.
Defendant appealed alleging several errors.

The Court of Appeals *held:*

1. The magistrate did not abuse his discretion in binding
defendant over for trial based on the tape recording made when
the victim called the emergency 911 number. The magistrate
properly determined the victim's statement to be a dying
declaration admissible in evidence under an exception to the
hearsay rule. Defendant was not unfairly prejudiced by this
evidence and the trial court did not abuse its discretion in
admitting the 911 tape.

2. The admission of evidence regarding a confession defen-
dant allegedly made to a cellmate and the cellmate's subse-
quent decision not to testify against defendant out of fear of
another cellmate was not an abuse of discretion.

3. The admission of certain photographs at trial was not an
abuse of discretion.

4. Defendant's motions for a mistrial based on alleged preju-
dice resulting from defendant's own conduct at the trial were
properly denied. Defendant's right to remain silent was not

REFERENCES
Am Jur 2d, Criminal Law §§ 936 *et seq.*
Am Jur 2d, Evidence §§ 257, 260.
Am Jur 2d, Homicide §§ 347 *et seq.*
Am Jur 2d, New Trial §§ 164 *et seq.*
What constitutes "newly discovered evidence" within meaning of
Rule 33 of Federal Rules of Criminal Procedure relating to
motions for new trial. 44 ALR Fed 13.
Comment Note—Statements of declarant as sufficiently showing
consciousness of impending death to justify admission of dying
declaration. 53 ALR3d 785.
Admissibility, as part of res gestae, of accusatory utterances made
by homicide victim after act. 4 ALR3d 149.

violated when he was compelled to submit to cross-examination following his own testimony.

5. No prosecutorial misconduct occurred in regard to the opening and closing arguments.

6. Denial of defendant's motion for new trial based on alleged newly discovered evidence sought to be used merely for impeachment purposes was proper.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — HEARSAY — DYING DECLARATIONS.

Four requirements must be met before a dying declaration may be admitted in evidence as an exception to the hearsay rule: the declarant must have been conscious of impending death, death must actually have ensued, the statement is sought to be admitted in a criminal prosecution against the individual who killed the decedent, and the statement must relate to the circumstances of the killing (MRE 804[b][2]).

2. CRIMINAL LAW — EVIDENCE — HEARSAY — DYING DECLARATIONS.

It is not necessary for the declarant of a dying declaration to have actually stated that he knew he was dying in order for the statement to be admissible; the consciousness of death requirement for the admission of the statement requires that it be established that the declarant was in fact *in extremis* at the time the statement was made and that the decedent believed his death was impending (MRE 804[b][2]).

3. CRIMINAL LAW — EVIDENCE — RULES OF EVIDENCE.

Evidence of a defendant's guilt is always prejudicial; however, where relevant and probative, such evidence should be excluded only if its admission would unfairly prejudice the defendant (MRE 402, 403).

4. MOTIONS AND ORDERS — CRIMINAL LAW — MISTRIAL.

The grant or denial of a motion for a mistrial rests in the trial court's sound discretion and an abuse of discretion will be found only where denial of the motion deprives the defendant of a fair trial.

5. CRIMINAL LAW — SELF-INCRIMINATION — WAIVER.

One who is on trial for a crime cannot be compelled to testify, either on his own behalf or for the people; however, if a defendant elects to testify, he is held to have waived his constitutional right of refusing to answer any question material to the case.

6. NEW TRIAL — NEWLY DISCOVERED EVIDENCE.

   Newly discovered evidence is not grounds for a new trial where such evidence would be used merely for impeachment purposes.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Carol K. Bucher,* Assistant Prosecuting Attorney, for the people.

*Howard & Quinn, P.C.* (by *Michael B. Quinn*), for defendant.

Before: WEAVER, P.J., and DOCTOROFF and M. F. SAPALA,* JJ.

DOCTOROFF, J. Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, and was sentenced to a prison term of fifteen to thirty years. He appeals as of right. We affirm.

At the preliminary examination, the prosecutor introduced a tape made when the victim, Gordon Darwin, called the emergency 911 number for an ambulance. Defendant objected, claiming hearsay. The district court admitted the tape as a dying declaration, an exception to the hearsay rule. MRE 804(b)(2). Defendant was bound over on an open murder charge.

At the inception of trial, defendant moved to quash the information. The trial court denied the motion, finding no abuse of discretion on the part of the district court. Defendant then moved to exclude the 911 tape from evidence, arguing that it was hearsay and inadmissible as a dying declaration because the victim had not been conscious

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

of his impending death. The trial court denied this motion.

The evidence at trial showed that on March 15, 1987, at 8:00 P.M., the Grand Rapids Police Emergency Communications Operator received a call from a person, later identified as Gordon Darwin. All incoming calls are taped directly from the telephone. A copy of the tape was admitted into evidence over defendant's objection and played for the jury. It reads as follows:

> *Operator:* At the tone the time will be 8:02 and forty seconds. At the tone the time will be 8:02 and . . . .
> *Dispatcher:* Grand Rapids Police.
> *Caller:* I need an ambulance right away.
> *Dispatcher:* Where?
> *Caller:* 21 Weston, apartment 514.
> *Dispatcher:* What's going on there?
> *Caller:* My heart's stabbed.
> *Dispatcher:* Your heart is what?
> *Caller:* I've been stabbed in the heart.
> *Dispatcher:* And who did it?
> *Caller:* Just come with the ambulance . . . .
> *Dispatcher:* Who did it?
> *Caller:* A friend of mine.
> *Dispatcher:* Is he there?
> *Caller:* William Siler, yeah.
> *Dispatcher:* William Tyler.
> *Caller:* Siler, he's looking out for me in the meantime
> *Dispatcher:* That would be apartment 514?
> *Caller:* 21 Weston, hurry please.
> *Dispatcher:* What is the phone number there, sir?
> *Caller:* 456-6725. Hurry with the ambulance.
> *Dispatcher:* Okay. William Siler did it, huh?
> *Caller:* Yeah.
> *Dispatcher:* Okay. What's he wearing? They're on the way.

*Caller:* Hurry with the ambulance.
*Dispatcher:* Right, they're on the way. Just tell me what he's wearing. Operator.

Police Officer Robert Winters was dispatched to Darwin's apartment and found him lying unconscious on the floor in a fetal position. Winters located a bleeding stab wound in Darwin's left chest. Darwin was transported to St. Mary's Hospital where he died at around 9:30 P.M.

On appeal, defendant first contends that the district court erred in binding defendant over based on the 911 tape whereon the victim named defendant as his attacker. Defendant argues that the tape was not a dying declaration and was inadmissible under MRE 802. Absent the tape, the magistrate would not have bound defendant over. We hold, in agreement with the trial court, that the magistrate did not abuse his discretion in binding defendant over.

It is the duty of the magistrate to bind the defendant over for trial if it appears at the conclusion of the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant committed it. *People v Grihm,* 148 Mich App 285, 289-290; 383 NW2d 631 (1986). It is well established that a reviewing court may not properly substitute its judgment for that of the magistrate, but may reverse only if it appears on the record that there has been an abuse of discretion. *People v Talley,* 410 Mich 378, 385; 301 NW2d 809 (1981).

MRE 804(b)(2) provides:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \*

(2) Statement under belief of impending death.
In a prosecution for homicide or in a civil action or
proceeding, a statement made by a declarant while
believing that his death was imminent, concerning
the cause or circumstances of what he believed to
be his impending death.

Four requirements must be met before a state-
ment can be admitted as a dying declaration:

(1) The declarant must have been conscious of
impending death;
(2) Death must actually have ensued;
(3) The statements are sought to be admitted in
a criminal prosecution against the individual who
killed the decedent; and
(4) The statements must relate to the circum-
stances of the killing. [*People v Parney,* 98 Mich
App 571, 581; 296 NW2d 568 (1979).]

It is the trial court's duty to determine whether
a statement is admissible as a dying declaration.
*Id.*

The condition in dispute in this case is whether
Darwin was conscious of impending death. "Con-
sciousness of death" requires, first, that it be estab-
lished that the declarant was in fact *in extremis* at
the time the statement was made and, secondly,
that the decedent believed his death was impend-
ing. But, it is not necessary for the declarant to
have actually stated that he knew he was dying in
order for the statement to be admissible as a dying
declaration. *People v Johnson,* 334 Mich 169, 173;
54 NW2d 206 (1952); *People v Schinzel,* 86 Mich
App 337, 342-343; 272 NW2d 648 (1978), rev'd on
other grounds 406 Mich 888 (1979).

Darwin called the emergency number, stating
that he had been stabbed in the heart and that he
needed an ambulance right away. Three times he

repeated his request for an ambulance and told the police to hurry. A forensic pathologist testified that Darwin remained conscious for four to five minutes after the wound was inflicted. Approximately one and a half hours later, he was pronounced dead without having regained consciousness. Taking these circumstances into account, we find that Darwin was conscious of impending death when he telephoned the emergency number. The tape recording reflects a dying declaration. The magistrate did not abuse his discretion.

Defendant next raises several claims of error concerning the admission of evidence. The admission or exclusion of evidence rests in the sound discretion of the trial judge, and the judge's exercise of discretion will not be overturned on appeal absent a showing of clear abuse of such discretion. *People v Burgess,* 153 Mich App 715, 722-723; 396 NW2d 814 (1986), lv den 428 Mich 868 (1987); *People v Myers,* 158 Mich App 1, 17; 404 NW2d 677 (1987). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence is generally admissible. MRE 402. Even if relevant, a trial court may choose to exclude evidence on the ground of unfair prejudice. MRE 403; *People v O'Brien,* 113 Mich App 183, 203; 317 NW2d 570 (1982), lv den 418 Mich 895 (1983).

Defendant first contends that the trial court should have excluded the 911 tape under MRE 403 because it was more prejudicial than probative. We disagree. Darwin's statement that defendant had stabbed him was relevant because it was proof of the crime of murder with which defendant was charged. The tape was extremely probative be-

cause no one saw defendant stab Darwin. Evidence of guilt is always prejudicial. Only if it would unfairly prejudice defendant should probative evidence be excluded. *People v Bunting,* 145 Mich App 210, 213; 377 NW2d 307 (1985). We hold that defendant was not unfairly prejudiced by the admission of this evidence and that the trial court did not abuse its discretion in admitting the 911 tape.

Defendant's next issues involve the following testimony. William Coonrod, a resident of Kent County Correctional Facility, was defendant's cellmate in May, 1986. He testified that he was reading the Bible when defendant began talking to him about his case. Defendant told Coonrod that defendant and Darwin had argued over a situation which had occurred several days before the stabbing involving the following facts. Darwin had a bloody nose and mouth and explained to defendant that he had been beaten by three men. Darwin told defendant that a female neighbor had set him up for the beating. Defendant then angrily confronted the neighbor and threatened her. Subsequently, Darwin admitted to defendant that he had not been beaten, but had fallen into the elevator and hurt his face. Apparently, Darwin had been intoxicated or high on drugs at the time. Defendant then felt like a fool for his actions with the neighbor. The night of the murder, Darwin began teasing defendant about making a fool out of himself. An argument ensued and defendant grabbed a knife and stabbed Darwin in the chest. Defendant then went back to his own apartment.

Defendant asked Coonrod how to get forgiveness from God and Coonrod wrote down defendant's words: "Oh, Lord, please forgive me, I have stabbed and killed a man." Defendant then signed the paper.

Defendant later asked Coonrod for the paper back, but Coonrod told defendant he had flushed it down the toilet. In fact, Coonrod had hidden the paper in a crack in the cell. Coonrod hoped to use the paper in some way to aid his own situation.

The next day, defendant and Nick Brasic, another cellmate, found the paper, tore it up and forced Coonrod to sign a paper stating that he would not testify against defendant. Coonrod testified that he was afraid of Brasic because Brasic was in jail on a murder charge.

Defendant argues that the trial court erred in allowing the prosecutor to elicit from witness Coonrod that Coonrod was afraid of Brasic, who was in jail on a murder charge, and that was why Coonrod signed a paper stating that he had nothing to say against defendant.

Defendant contends that this evidence was inadmissible under MRE 403. However, the trial court made a specific finding that the evidence was relevant to show why Coonrod signed the paper and that its prejudicial effect did not outweigh its relevancy. We do not believe the trial court abused its discretion in so ruling. It is not within the province of this Court to second guess the trial court's decision. *Myers, supra.*

Defendant also contends that this evidence was inadmissible under MRE 404(a)(4), which states:

> Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> * * *
>
> (4) Character of witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

Defendant did not object to the admission of this evidence on this basis. We find that evidence of Brasic's murder charge was not admitted to prove that Brasic acted in conformity with his alleged character, but to show why Coonrod felt afraid and why Coonrod signed the paper. We hold that the trial court did not abuse its discretion by admitting evidence of Brasic's murder charge.

Prior to trial, defendant moved in limine to exclude photographs of the crime scene and autopsy of the victim on the basis that they were inflammatory. The trial court reserved judgment on the autopsy photographs, but allowed admission of the crime-scene photographs and one of the victim taken by his family.

We hold that the trial court did not abuse its discretion by admitting these photographs into evidence. The photographs did not unfairly prejudice defendant and were necessary and instructive to show the crime scene, to link defendant with Darwin and to place defendant in Darwin's apartment. *People v Sowders,* 164 Mich App 36, 46; 417 NW2d 78 (1987). No autopsy photographs were admitted.

Defendant's next two arguments involve defendant's behavior as a witness on his own behalf. Defendant took the stand and was sworn in as a witness. He immediately began to make a statement about a plea which the prosecutor had offered to him. Over the orders of the trial court to stop speaking, defendant asked why he was being tried on an open murder charge when the prosecutor had offered to allow him to plead to manslaughter. He was continually instructed by the court, both in and out of the jury's presence, to only answer the questions of the attorneys. Defendant disregarded the instructions of the trial court. Defendant then allowed his attorney to

examine him. Defendant claimed that he and Darwin were good friends and that he had no reason to harm Darwin. Then, upon cross-examination and in spite of the trial court's orders, defendant began questioning the prosecutor about the plea bargain. The trial court instructed defendant to answer the prosecutor's questions. Defendant refused to answer the questions of the prosecutor and claimed the right to remain silent under the Fifth Amendment to the United States Constitution. Defense counsel made several motions for mistrial as a result of defendant's actions and statements before the jury.

Defendant first contends that the trial court erred in refusing to grant a mistrial after defendant made spontaneous statements concerning the plea that the prosecutor had offered to him. Defendant argues that he was prejudiced by his outburst.

The power to declare a mistrial should be used with the greatest caution, only under urgent circumstances, and for very plain and obvious causes. A mistrial will not be declared as a consequence of any mere irregularity which is not prejudicial to the rights of defendant. The grant or denial of a motion for a mistrial rests in the trial court's sound discretion and an abuse of discretion will be found only where denial of the motion deprives the defendant of a fair trial. The test is the defendant's ability to get a fair trial. *People v Barker,* 161 Mich App 296, 305; 409 NW2d 813 (1987).

Defendant himself created the debacle at his trial. We find that the trial court was correct in denying defense counsel's motions for a mistrial and instructing the jury to disregard defendant's actions. We will not condone or allow a defendant to perpetrate chaos at his own trial and then obtain a mistrial on the basis of prejudice. We hold

that the trial court did not abuse its discretion in denying defendant's motions for mistrial.

Defendant also claims that his Fifth Amendment right to remain silent was violated when the trial court ordered him to submit to cross-examination. We find no merit to this argument. One who is on trial for a crime cannot be compelled to testify, either on his own behalf or for the people. However, if he elects to do so, he is held to have waived his constitutional right of refusing to answer any question material to the case. *People v Robinson,* 306 Mich 167, 176; 10 NW2d 817 (1943); *People v Payne,* 67 Mich App 530, 532-533; 241 NW2d 278 (1976). Defendant elected to testify. Once he took the stand on his own behalf, the prosecutor had the right to cross-examination. The trial court properly instructed defendant to answer the prosecutor's questions. No error occurred.

Defendant's next two claims concern alleged prosecutorial misconduct. Defendant first alleges that during opening argument the prosecutor improperly referred to defendant's silence at the time of his arrest.

Evidence of a defendant's silence on certain matters may be presented to elicit the full extent of a defendant's statement made to the arresting officer. *People v Scobey,* 153 Mich App 82, 87; 395 NW2d 247 (1986). Here, the prosecutor's remarks and the police officers' testimony were offered to explain omissions in defendant's statement given after defendant had been arrested and had waived his *Miranda*[1] rights. It was, therefore, not improper for the prosecutor to refer to defendant's silence or to question the police officers about it. We find no error in the prosecutor's opening remarks or in his questioning of the police officers.

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Defendant next removes one statement from the prosecutor's closing argument and uses it to claim that the prosecutor clearly implied to the jury that it should convict based on sympathy. Defendant claims that this alleged improper argument requires reversal. We find this argument to be without merit.

The prosecutor described the victim as a twenty-nine-year-old man who will never smell flowers, see his family, or do anything again because defendant snuffed out his life. While it is true that arguments which are little more than an appeal to the jury's sympathy for the victim are improper, *People v Wise,* 134 Mich App 82, 104; 351 NW2d 255 (1984), lv den 422 Mich 852 (1985), defendant mischaracterizes the remarks by taking them out of context. A prosecutor's closing argument should be considered in its entirety. *People v Hedelsky,* 162 Mich App 382, 386; 412 NW2d 746 (1987). The entire closing argument in this case shows that the prosecutor asked the jury to examine all of the evidence and convict only if the evidence indicated defendant's guilt beyond a reasonable doubt. The trial court instructed the jury that sympathy was not to affect its judgment. Defendant suffered no prejudice.

Finally, defendant argues that the trial court erred in denying defendant's postconviction motion for a new trial based on newly discovered evidence. We disagree.

The grant or denial of a motion for a new trial lies within the sound discretion of the trial court. To establish error, a clear abuse of discretion must be shown. Newly discovered evidence is not grounds for a new trial where it would be used merely for impeachment purposes. *People v Stricklin,* 162 Mich App 623, 631-632; 413 NW2d 457 (1987). The trial court correctly denied defendant's

motion. The testimony of two inmates concerning Coonrod's disclosure of his intent to commit perjury was sought to be introduced solely to impeach Coonrod's testimony.

Affirmed.