PEOPLE v HARRIS

Docket Nos. 115243, 115739, 116045. Submitted February 21, 1991, at Detroit. Decided August 19, 1991, at 9:15 A.M. Leave to appeal sought.

Derrick Harris, Alfreda Drake, and Cortez Walker were each convicted by jury in a joint trial in the Detroit Recorder's Court, Craig S. Strong, J., of second-degree murder. Walker was also convicted of assault with intent to commit murder. Harris was sentenced to 35 to 100 years' imprisonment, Drake to life imprisonment, and Walker to concurrent terms of 50 to 100 years and 80 to 120 months' imprisonment. The defendants appealed separately, and their appeals were consolidated.

The Court of Appeals *held:*

1. The binding over of Harris after preliminary examination on charges of first-degree murder and assault with intent to commit murder did not constitute an abuse of discretion. There was sufficient evidence to support the binding over. The prosecutor established that Harris either possessed the intent to kill the murder victim or participated in the victim's beating knowing that the other perpetrators had such intent. Although Harris himself did not attack the assault victim, the circumstances and events of these cases gave rise to an inference that Harris had participated in an organized plan to beat both victims.

2. The trial court did not err in denying Harris' motion for a directed verdict with respect to the charges against him. The evidence, when viewed in a light most favorable to the prosecutor, indicated that the jury could have found the essential elements of the charged offenses proven beyond a reasonable doubt. The prosecutor offered sufficient evidence showing that Harris aided and abetted the assault victim's attackers. The prosecutor also introduced sufficient evidence from which the jury could infer premeditation and deliberation with respect to the murder.

3. The trial court did not abuse its discretion in denying

REFERENCES
Am Jur 2d, Criminal Law §§ 598, 599, 606; Homicide §§ 552, 554.
See the Index to Annotations under Homicide; Sentence and Punishment.

Harris' motions for a new trial. His conviction of second-degree murder was not against the great weight of the evidence presented. The prosecutor established that Harris caused the murder victim's death and that the killing was done with malice and without justification or excuse.

4. The trial court did not abuse its discretion in denying Harris' motion for a mistrial on the basis of Walker's physical attack upon the prosecutor in the jury's presence. Harris was not prejudiced by this incident, because the trial court admonished the jury regarding the incident and took additional measures to ensure a fair trial.

5. Harris was not denied a fair trial by the prosecutor's improper impeachment of a witness through use of evidence of a prior inconsistent statement. A proper foundation was laid for the statement, and the witness often refused to answer questions.

6. The trial court did not err in failing to instruct the jury regarding voluntary manslaughter in the case against Harris. A homicide may be reduced to voluntary manslaughter if the circumstances surrounding the killing show that malice was negated by adequate and reasonable provocation and the homicide was committed in the heat of passion. In Harris' case, however, there was no evidence of provocation or of a state of mind incapable of cool reflection.

7. Drake was not denied a fair trial by the trial court's failure to advise her of her right to testify or because a waiver of that right was not made on the record. The trial court had no duty to advise Drake of her right to testify, and there is no requirement that the waiver of that right be made on the record.

8. Drake was not denied a fair trial as a result of the jurors' discussion following Walker's physical attack upon the prosecutor. The discussion centered on the jurors' duty to remain impartial, not on the facts of the cases against the defendants.

9. Drake's presentence report must be amended on remand to correctly reflect that, as the trial court acknowledged at sentencing, she had an employment history. A copy of the amended report must be forwarded to the Department of Corrections.

10. The trial court did not abuse its discretion in scoring Drake's sentencing information report with regard to the offense variables for multiplicity of victims and exploitation of victim vulnerability. Drake's acquittal of the assault charge was properly considered at sentencing as an indication that she participated in the assault but that there was insufficient proof

for conviction, and the evidence at trial established that Drake exploited the vulnerability of the murder victim.

11. The trial court, in instructing the jury with regard to aiding and abetting by Walker, did not err in failing to state that the principal and an accomplice must have a shared mens rea and intend the commission of the same offense. The instructions as a whole fairly presented the issues to be tried and sufficiently protected Walker's rights.

12. The trial court did not err in failing to instruct the jury regarding voluntary manslaughter in the case against Walker, because the evidence did not support such an instruction.

13. Walker's claim that he was denied a fair trial by the prosecutor's questioning of a witness is the same claim Harris raised and the Court of Appeals rejected.

14. The trial court sufficiently addressed a challenge by Walker of his presentence report with respect to an indication that he earned part of his income from the illicit distribution of controlled substances. The trial court accepted Walker's refutation, and its consideration of the fact that the murder and assault were connected to illegal drug activity was not contrary to its acceptance of Walker's challenge.

15. Although sentencing in these cases preceded *People v Milbourn,* 435 Mich 630 (1990), the sentences of Harris and Walker, who claimed that their sentences were excessive, are subject to the proportionality test of *Milbourn.* Because the record does not demonstrate that their sentences, which exceeded the sentencing guidelines, were proportional, and because neither the necessity for a departure from the guidelines nor the magnitude of the departure has been subjected by the trial court to the proportionality test, a remand for resentencing is required.

Convictions affirmed, but remanded for amendment of Drake's presentence report and resentencing of Harris and Walker.

SENTENCES — SENTENCING GUIDELINES — PROPORTIONALITY.

A sentencing court, in determining whether a sentence is proportional to the seriousness of the offense for which it is imposed, should inquire where on the sentencing guidelines range should the sentence fall, what unique facts exist that are not already adequately reflected in the guidelines, why such facts justify any departure from the guidelines, and, if there is to be a departure, what its magnitude and justification should be.

*Frank J. Kelley,* Attorney General, *Gay Secor*

*Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Olga Agnello,* Assistant Prosecuting Attorney, for the people.

*James A. Carlin,* for Derrick Harris on appeal.

*Douglas Hamel,* for Alfreda Drake on appeal.

*Patricia S. Slomski,* for Cortez Walker on appeal.

Before: REILLY, P.J., and SHEPHERD and MARILYN KELLY, JJ.

SHEPHERD, J. In these consolidated cases, defendants Derrick Harris, Alfreda Drake, and Cortez Walker appeal as of right their convictions and sentences. Defendants were originally charged with first-degree murder and assault with intent to commit murder as a result of their involvement in the February 4, 1988, beating death of Mary Guyton and assault of Ervin Brewer. Each of the defendants was convicted of second-degree murder, MCL 750.317; MSA 28.549. Walker was also convicted of assault with intent to commit murder, MCL 750.83; MSA 28.278. Harris was sentenced to 35 to 100 years' imprisonment, Drake was sentenced to life imprisonment, and Walker was sentenced to concurrent prison terms of 50 to 100 years and 80 to 120 months.

According to Ervin Brewer, Guyton and a man named Chico had been selling crack cocaine out of the apartment in which Guyton and Brewer were attacked. Defendants Harris and Drake first came at around 8:00 A.M. on February 4, 1988, to collect money for the crack, but Guyton did not have the full amount. Harris and Drake then left, but re-

turned a short time later with a man named Quincy. Quincy threatened Guyton and Brewer that if he did not get his money by noon, they both would be killed. Quincy, Harris, and Drake then left the apartment again, returning shortly thereafter with defendant Walker and a rifle.

Quincy and defendants Harris and Drake began beating Guyton and continued to do so as she fled into the bedroom. Meanwhile, Chico and defendant Walker beat Brewer with the rifle, a lamp, and their fists and feet. Brewer heard defendant Drake say Guyton should be beaten with a skillet and he then saw one of the men get a skillet. Another witness saw Chico get a skillet and take it into the bedroom. He also heard Guyton call defendant Drake a "bitch," and then heard slapping noises. Brewer was eventually ordered into the bedroom, where he saw Guyton with her hands bound, bleeding and begging for her life. Brewer was then told to lay face down on the floor, whereupon his hands were tied behind his back with a telephone cord and he was kicked.

Quincy, Chico, and Walker continued to beat Guyton for about two hours, with Drake periodically joining in. At one point, Guyton was permitted to make two phone calls in an effort to get the money, but she was unsuccessful and the beating continued. As the two victims were being beaten, defendant Harris sprayed Guyton with soda pop. Brewer later recalled cold water being poured on him. Defendant Walker, Quincy, and Chico eventually put Guyton in a closet, where they continued to beat her. After the assailants were gone, Guyton did not respond to Brewer's calls. Brewer managed to free himself, and he fled the apartment through the bedroom window. The police found Guyton's body lying face down in the closet with her hands tied behind her back with wire and

a telephone cord. An autopsy revealed multiple fresh bruises, lacerations, and abrasions on Guyton's face, scalp, neck, back, chest, hands, and arms. The coroner opined that death was caused by multiple blunt force trauma and compression of the neck.

DOCKET NO. 115243

As do the other defendants, defendant Harris raises a number of issues on appeal. The first is that there was insufficient evidence to support binding him over on the two charged offenses and that his motion to quash the information should have been granted. The function of the examining magistrate is to determine whether a crime has been committed and whether there is probable cause for charging the defendant with that crime. MCL 766.13; MSA 28.931; *People v King,* 412 Mich 145, 152-153; 312 NW2d 629 (1981). A reviewing court may not substitute its judgment for that of the magistrate, but may reverse only upon a determination that the magistrate abused his discretion. *People v Talley,* 410 Mich 378, 385; 301 NW2d 809 (1981).

We find no abuse of discretion here. With regard to the murder charge, the prosecution only needed to show some evidence that defendant either possessed the requisite intent to kill Guyton or participated knowing that the principals had such intent. See *People v Youngblood,* 165 Mich App 381, 387; 418 NW2d 472 (1988). Premeditation and deliberation could be inferred from the circumstances surrounding the killing and the apparent organized conduct before it, such as defendant's having repeatedly returned with more people and a weapon. Although Harris himself did not assault Brewer, the circumstances and events surrounding

the crime gave rise to an inference of an organized plan in which defendant participated.

Defendant also challenges the trial court's denial of his motion for a directed verdict with respect to both charges. We review the denial of such a motion by reviewing the evidence presented in a light most favorable to the prosecution and determining whether a rational trier of fact could have found the essential elements of the charged offenses proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den 449 US 885 (1980). Defendant's motion was properly denied with respect to both charges. Defendant was prosecuted under an aiding and abetting theory on the assault charge, and there was sufficient evidence to submit to the trier of fact the issues of the aid and encouragement given by defendant to Walker and Chico, who did the actual beating, as well as defendant's knowledge of their intent to murder Brewer. With regard to the murder charge, defendant claims that the testimony showed that he intended that Guyton remain alive and that he left the apartment and tried to get the others to leave while Guyton was still alive, thus negating the element of premeditation and deliberation. However, viewing the evidence in a light most favorable to the prosecution, we find that there was evidence that defendant orchestrated a plan to bring help and weapons to the apartment and that he participated in Guyton's beating and sprayed her with soda while others were beating her. There was sufficient evidence from which a jury could infer premeditation and deliberation.

Defendant further contends that his conviction for second-degree murder was against the great weight of the evidence and that his motion for a new trial therefore should have been granted. We

review the denial of that motion for an abuse of discretion. An abuse of discretion will be found only where denial of the motion was manifestly against the clear weight of the evidence. *People v Gonzalez,* 178 Mich App 526, 532; 444 NW2d 228 (1989). We find no abuse of discretion here.

To establish second-degree murder, the prosecution was required to prove that defendant caused the death of the victim and that the killing was done with malice and without justification or excuse. *People v Porter,* 169 Mich App 190, 192; 425 NW2d 514 (1988). Malice is the intent to kill, the intent to do great bodily harm, or the intent to create a high risk of death or great bodily harm with knowledge that such is the probable result. Malice may be inferred from the facts and circumstances of the killing. *Id.,* pp 192-193. The evidence in this matter revealed that Guyton died as a result of multiple blunt force trauma and compression of the neck, either one alone being sufficient to kill her. The police found two skillets with blood on them, and the medical examiner testified that the blunt force injuries could have been inflicted with the skillets. There was also testimony that defendant actively participated in Guyton's beating, at least up to a certain point, and thereafter sprayed her with soda while the others continued to beat her. This evidence showed that defendant participated in the beating or aided and encouraged others. Malice could be inferred from the number of people attacking Guyton, the duration of the beating, and the instruments used. There was no claim of excuse or justification.

Defendant further assigns error to the trial court's failure to grant a mistrial after his codefendant, Walker, apparently attacked the prosecutor with the jurors present. We have carefully reviewed the record and find that the trial court did

not abuse its discretion in denying the motion. See *People v Siler,* 171 Mich App 246, 256; 429 NW2d 865 (1988). The inquiry in situations such as this focuses on the defendant's ability to get a fair trial. *Id.* The trial court admonished the jurors regarding their function and duties, and questioned each one individually to determine the effect, if any, of Walker's outburst on them. All the jurors indicated they could remain impartial, and those jurors who had expressed some concern at the time of the incident explained that they merely reacted to what was to them a frightening and unusual situation but that they understood the event could not be allowed to influence their decisions. Furthermore, contrary to defendant's assertion, there is no evidence any of the defendants were thereafter shackled. We believe the trial court went to great lengths to ensure that the defendants received a fair trial, and we perceive no prejudice to defendant that would warrant a finding that the court abused its discretion in denying defendant's motion for a mistrial.

Defendant's fifth contention is that he was denied a fair trial because of the prosecutor's conduct in questioning a witness. While we agree with defendant that on several occasions the prosecutor did not properly impeach the witness with a prior inconsistent statement, a foundation was initially laid for the statement and, given the difficult nature of this witness, who often refused to answer direct questions, we find no prejudice to defendant or that he was denied a fair trial by the questioning.

Defendant next argues that the trial court erred in failing to instruct the jury with regard to voluntary manslaughter as requested. We initially note that defendant's counsel did not object to the court's failure to include this instruction in the

jury charge, thereby waiving appellate review unless there is a miscarriage of justice. *People v Watkins*, 178 Mich App 439, 450; 444 NW2d 201 (1989), lv gtd 435 Mich 867 (1990). There was no miscarriage of justice here, because there was no evidence to support this lesser offense. See *People v Beach*, 429 Mich 450, 476; 418 NW2d 861 (1988). A homicide may be reduced to voluntary manslaughter if the circumstances surrounding the killing show that malice was negated by adequate and reasonable provocation and the homicide was committed in the heat of passion. *People v Townes*, 391 Mich 578, 589; 218 NW2d 136 (1974). The evidence adduced at trial did not support a finding of provocation or that defendant acted with a state of mind incapable of cool reflection, *id.*, such that a jury could convict him of voluntary manslaughter.

Defendant Harris also argues that his sentence was excessive. Because defendant Walker raises the same argument and we reach the same result in both cases, we will comment on the sentences at the conclusion of this opinion.

### DOCKET NO. 115739

Defendant Drake likewise appeals both her conviction and sentence. Her first contention is that she was denied a fair trial because she was denied the right to testify on her own behalf and there was no waiver of that right made on the record. We find no merit to this argument. In *People v Simmons*, 140 Mich App 681; 364 NW2d 783 (1985), this Court, aligning itself with the majority of jurisdictions, held that there is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify. Defendant herein did not testify, and, contrary to her argument, the

trial court had no duty to advise her of the right, nor was it required to determine whether she made a knowing and intelligent waiver of the right.

Defendant next contends that she was denied a fair trial because the jury apparently discussed the case after defendant Walker's outburst. We disagree. If the jurors discussed the case, the discussion focused on their responsibility to remain impartial, not on the facts of the case. Defendant has further failed to demonstrate any prejudice as a result of this alleged discussion and has thus failed to establish any basis for a new trial. See *People v Rohrer*, 174 Mich App 732, 739-740; 436 NW2d 743 (1989).

Defendant's third argument is that she is entitled to have the presentence report amended and a corrected copy sent to the Department of Corrections in light of the trial court's acknowledgment at sentencing that, contrary to what was stated in the report, defendant did have an employment history. We agree and remand for the report to be amended and a copy thereof sent to the Department of Corrections. MCL 771.14(5); MSA 28.1144(5); *People v Norman*, 148 Mich App 273; 384 NW2d 147 (1986).

Defendant Drake's final contention concerns the scoring of offense variables 6 (multiple victims) and 7 (exploitation of victim vulnerability) on the sentencing information report. She claims that these offense variables were improperly scored and that the trial court did not address her claims of inaccuracy. She further asserts that while the guidelines range would not have been affected, proper scoring of these offense variables would have placed her at the low end of level IV and, thus, may have affected her sentence. We find no basis for resentencing here, because there was

evidence to support the scoring of both offense variables.

Defendant's sole objection to the scoring of offense variable 6 rests on the fact that she was acquitted of the assault charge stemming from the beating of Ervin Brewer. The question whether a sentencing court may consider criminal activity of which the defendant was acquitted was recently addressed by our Supreme Court in *People v Ewing,* 435 Mich 443; 458 NW2d 880 (1990). Of the five justices who addressed the issue, four found that such conduct could be taken into account at sentencing because an acquittal does not necessarily mean that the defendant did not engage in criminal conduct, but only demonstrates a lack of proof beyond a reasonable doubt. See also *People v Wiggins,* 151 Mich App 622, 625; 390 NW2d 740 (1986).

Our review of sentencing guidelines calculations is very limited. *People v Richardson,* 162 Mich App 15, 16; 412 NW2d 227 (1987). A sentencing judge has discretion in determining the number of points to be scored, provided that there is evidence on the record which adequately supports a particular score. *People v Day,* 169 Mich App 516, 517; 426 NW2d 415 (1988). Where effectively challenged, a sentencing factor need be proved only by a preponderance of the evidence. *People v Walker,* 428 Mich 261; 407 NW2d 367 (1987). While defendant Drake herself may not have physically attacked Brewer, the two beatings were inextricably woven together such that the court could find more than one victim was involved. We further find sufficient evidence to support the scoring of offense variable 7, because defendant Drake joined three men and one 300-pound teenager in an attack on a 5-foot-5-inch, 114-pound woman whose hands were bound behind her back, rendering her

defenseless. The trial court did not abuse its discretion in scoring these offense variables as it did.

DOCKET NO. 116045

Defendant Walker raises six issues on appeal, the first of which is a claim that the trial court's instruction to the jury with regard to aiding and abetting was erroneous because it did not state that the principal and accomplice must have a shared mens rea and intend the commission of the same offense. We disagree.

Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories if there is evidence to support them. *People v Reed,* 393 Mich 342, 349-350; 224 NW2d 867 (1975), cert den 422 US 1044 (1975). Jury instructions are reviewed in their entirety to determine if error requiring reversal occurred, and they are not extracted piecemeal in an effort to establish error. *People v Burgess,* 153 Mich App 715, 726; 396 NW2d 814 (1986). Even though the instructions may be somewhat imperfect, there is no error if they fairly presented to the jury the issues to be tried and sufficiently protected the rights of the defendant. *People v Kalder,* 284 Mich 235, 241-242; 279 NW 493 (1938). No error results from the omission of an instruction if the charge as a whole covers the substance of the omitted instruction. *People v Bender,* 124 Mich App 571, 575; 335 NW2d 85 (1983). The trial court's instructions in the present matter fairly presented the issues to be tried, including those issues for which defendant claims instructions were omitted, and sufficiently protected defendant's rights.

Defendant argues that the trial court erred in failing to instruct the jury regarding voluntary

manslaughter. There was no evidence adduced at trial to support such an instruction, and we therefore find this argument to be without merit.

Defendant's third claim is the same as defendant Harris' contention regarding the prosecutor's questioning of a witness. We need not revisit the issue.

Defendant Walker also argues that the trial court erred in failing to resolve a claimed inaccuracy in the presentence report regarding defendant's having gained a portion of his financial support through narcotics distribution and that he should therefore be resentenced or the matter remanded for a hearing regarding the challenged information. We find, however, that the trial court accepted defendant's refutation of the challenged information. Although the court later took into consideration the fact that the murder and assault were connected to drug activity, this acknowledgment was not contrary to the court's acceptance of defendant's challenge to the disputed information. The fact that defendant Walker did not gain a portion of his income from narcotics distribution, if it could be proven, would not alter the fact that Guyton's murder stemmed from her failure to fully pay her drug supplier.

SENTENCES OF HARRIS, DOCKET NO. 115243, AND
WALKER, DOCKET NO. 116045

Harris was sentenced to 420 to 1200 months, i.e., 35 to 100 years. Walker received a sentence of 50 to 100 years for the murder charge and 80 to 120 months for the assault conviction. The guidelines range for Harris was 120 to 300 months or life, and the guidelines range for Walker was 144 to 300 months or life. Thus, Harris received a minimum sentence that was ten years greater than the

guidelines' recommendation, and Walker's minimum sentence exceeded the guidelines' range by twenty-five years. Because we are required to review these sentences under *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), our question must be whether the record adequately demonstrates that the sentences meet the standard of proportionality announced in that case. Our response is that the trial judge did not have the benefit of *Milbourn* when these sentences were imposed and we are unable to tell from the record what the sentences might have been had the trial judge employed the *Milbourn* standard. We therefore remand for resentencing.

The crimes in these cases were exceptionally violent, and there would be, in our view, some justification for imposing a sentence at or beyond the outer limit of the guidelines' range. *Milbourn* reestablishes the doctrine that a sentence within the guidelines is presumptively valid. Had the sentences been within the guidelines, we would have found no reason to question them.

The guidelines are a reflection of the sentences that courts actually impose for various offenses and offenders. Contrary to popular belief that exists in some quarters, a sentence within the guidelines, particularly at the outer limits of the guidelines, is not a mere slap on the wrist. The guidelines attempt to take into account all the factors that a trial court is required to consider, including the seriousness of the offense and the prior record of the offender. In the instant cases, the trial judge exceeded the guidelines by ten and twenty-five years and justified the departure with factors that already may have been taken into account in the guidelines.[1]

---

[1] The Supreme Court recognized in *Milbourn* that occasions exist

Certainly, every case is unique, but one purpose of the guidelines is to avoid turning each unique feature of a case into a separate category. Normally, if the unique facts of the case fit into a guidelines category, then the unique facts have been taken into account by the guidelines. For example, in the case of Harris, he sprayed soda pop on the dying victim. The guidelines did not make and could not have made a separate category for that act. However, such callousness fits into the category of "aggravated physical abuse," a category that is covered by the guidelines. Michigan Sentencing Guidelines (2d ed), p 77.

This illustrates why *Milbourn* held:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. See *People v McKinley*, 168 Mich App 496, 512; 425 NW2d 460 (1988). ("We do not dispute that a prison sentence—even a lengthy one—is in order. We conclude, however, that a fifteen-year minimum sentence for the events that occurred here is disproportionate to the specific acts committed and the danger involved. *Too frequently reasons are given for a*

when the trial judge may exceed the guidelines because of a factor that is already included within them. Departure upward then may be justified if the conduct or criminal record is extraordinary in its degree and thus beyond the anticipated range of behavior treated in the guidelines. 435 Mich 660.

*sentence that apply equally to a lesser or greater sentence unless an explanation is offered on the record for the specific sentence given.* Such was the case here.") (Emphasis added.) [435 Mich 659-660.]

In sum, we remand for resentencing because the record does not demonstrate that the sentences were proportional under *Milbourn* and because neither the necessity for a departure from the guidelines nor the magnitude of the departure has been subjected by a trial judge to the *Milbourn* proportionality test. This remand should not be interpreted as a criticism of the trial judge. He may not be criticized for failing to utilize a standard that did not exist at the time of sentencing. Nevertheless, the Supreme Court in *Milbourn* gave the proportionality test limited retroactivity and the *Milbourn* standard now applies to this case.

We do not wish to imply that the same sentences may not be imposed after the trial judge has had an opportunity to reflect on *Milbourn* and to have the benefit of arguments from counsel regarding how the doctrine of proportionality applies to this case. Our ruling is based solely on our inability to give meaningful appellate review under *Milbourn,* given the present state of the record.

On remand, there should be a threefold inquiry, at each stage of which the *Milbourn* proportionality test must be applied:

1. If the sentence is to be within the guidelines, where on the guidelines range should the sentence fall?

2. What unique facts exist that are not already adequately reflected in the guidelines, and why do such facts justify any departure from the guidelines?

3. If there is to be a departure, what should be its magnitude and the justification for the specific departure imposed?

We believe that the above lines of inquiry are what the *Milbourn* analysis requires. *Milbourn* by its very language does not seek to take away the judicial discretion of the trial judge. Rather, the opinion at page 662 *et seq.* demonstrates that it seeks to guide the exercise of that discretion along more rational and systematic lines. Judicial discretion must be something more than a hunch or a wild guess. The inquiry that we impose here will enable the trial judge to comply with the mandate of *Milbourn* in a manner that reduces the risk of irrational sentencing that is either too low or too high for the given case.

We do not hold that the above three-step analysis must be followed to the letter in every case. However, all of the factors mentioned in the analysis are contained in *Milbourn* and must, in some manner, be included in the trial judge's articulation on the record of the reasons for the sentence.

We affirm the convictions of all three defendants, remand Drake's case for the trial court to revise defendant Drake's presentence report and forward a corrected copy to the Department of Corrections, and remand in the Harris and Walker cases for resentencing consistent with this opinion and *Milbourn.*