# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

MARQUIS ALLEN O'NEAL,

        Defendant-Appellee.

UNPUBLISHED
September 20, 2016

No.   326985
Macomb Circuit Court
LC No.   2014-003314-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DONALD ODELL ROBERTS,

        Defendant-Appellee.

No.   326987
Macomb Circuit Court
LC No.   2014-003315-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DEANGELO MARTEZ JONES,

        Defendant-Appellee.

No.   326988
Macomb Circuit Court
LC No.   2014-003316-FC

---

Before:  GADOLA, P.J., and WILDER and METER, JJ.

PER CURIAM.

In these consolidated appeals, the prosecutor appeals as of right an order granting the motions of defendants Marquis Allen O'Neal, Donald Odell Roberts, and Deangelo Martz Jones

-1-

to quash bindovers and dismiss charges of second-degree murder, MCL 750.317. We reverse and remand.

These cases arose from an altercation involving (1) defendants; (2) the mother of defendant Jones, Belinda Jones (hereinafter "Belinda"); and (3) one of Belinda's neighbors, James Williams (hereinafter "James"). Evidence was presented that, after James confronted the group at Belinda's apartment while holding a knife and stick, Jones tackled James to the ground, defendant Roberts and defendant O'Neal helped physically assault James for approximately 20 minutes, and Belinda stabbed him seven times. James eventually died as a result of complications from the stab wounds, and defendants and Belinda were arrested and charged with second-degree murder. Defendants and Belinda were charged together and were bound over as charged. However, defendants filed motions to quash their bindovers, arguing that the prosecution failed to present evidence relating to every element of second-degree murder under an aiding-and-abetting theory. The circuit court quashed defendants' bindovers, stating that there was no evidence "put forth of a common plan amongst the defendants to engage in the alleged assault . . . . In fact, to the contrary; the evidence seemed to suggest that this is more of a reactive, reaction to an individual that had approached the group and there was no time for any type of common plan in place."

The prosecutor argues that the district court did not abuse its discretion in binding defendants over on second-degree murder, because the prosecution carried its burden at the preliminary examination by presenting some evidence of each element of the crime with regard to each defendant. We agree.

This Court reviews the district court's decision to bind a defendant over for trial for an abuse of discretion. *People v Crippen*, 242 Mich App 278, 282; 617 NW2d 760 (2000). A circuit court's ruling on a motion to quash a bindover is reviewed de novo. *Id*. "Where there is no abuse of discretion by the district court, a trial court's decision to quash the information should be reversed." *People v Hampton*, 194 Mich App 593, 596; 487 NW2d 843 (1992).

"The examining magistrate's function is 'to determine whether a crime has been committed and whether there is probable cause for charging the defendant with that crime.' " *People v Carlin*, 239 Mich App 49, 64; 607 NW2d 733 (1999), quoting *People v Harris*, 190 Mich App 652, 657; 476 NW2d 767 (1991). "The prosecution need not establish guilt beyond a reasonable doubt at the preliminary examination." *People v Drake*, 246 Mich App 637, 640; 633 NW2d 469 (2001). However, the prosecutor must present "evidence regarding each element of the crime or evidence from which the elements may be inferred . . . ." *Carlin*, 239 Mich App at 64. When the evidence presented at the preliminary examination "conflicts or raises a reasonable doubt concerning [the defendant's] guilt, there are questions for the trier of fact, and the defendant should be bound over." *Id*.

At the preliminary examination, the prosecutor advanced the theory that defendants were guilty of second-degree murder under a theory of aiding and abetting. The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and

wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation and quotation marks omitted).

A defendant who does not directly commit second-degree murder, but who "procures, counsels, aids, or abets" in the commission of the crime may be convicted as if the defendant actually committed the offense. See MCL 767.39. Aiding and abetting describes all forms of assistance given to the principal of a crime and encompasses all words or deeds that might support or encourage the commission of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). An aider and abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Id*.; *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010).

> To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Izarraras-Placante*, 246 Mich App 490, 495-496; 633 NW2d 18 (2001) (citation and quotation marks omitted).]

To show intent for second-degree murder, the prosecutor can show that second-degree murder was a natural and probable consequence of the commission of an intended offense. *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). The Michigan Supreme Court has reasoned that "a natural and probable consequence of a plan to assault someone is that one of the actors may well escalate the assault into a murder." *Id*. at 11.

At the preliminary examination, the prosecutor presented evidence establishing the first element of aiding and abetting—that "the crime charged was committed by the defendant or some other person." *Izarraras-Placante*, 246 Mich App at 495. The prosecutor presented evidence that James died as a result of stab wounds inflicted by Belinda when she intentionally stabbed him seven times during the physical altercation. Further, the prosecutor presented evidence that when Belinda stabbed James, he did not possess a weapon and he was lying prone on the ground being beaten by at least three men. Accordingly, the prosecutor presented evidence establishing probable cause that Belinda was guilty of second-degree murder. *Smith*, 478 Mich at 70. While Belinda claimed that she acted in self-defense, that claim, at best, created a conflict in the evidence that raised a reasonable doubt regarding her guilt, a question best left to a jury.

The prosecutor also presented evidence establishing the second element of aiding and abetting—that "defendant[s] performed acts or gave encouragement that assisted the commission of the crime." *Id*. James's fiancée, who witnessed part of the altercation, testified that multiple men beat James for approximately 20 minutes while he was on the ground unable to defend himself. One of Belinda's neighbors identified Jones as the person who started the physical assault by tackling James to the ground, and she stated that she saw other men join in the fight.

A friend of O'Neal and Jones who was a witness to the assault indicated that each of the defendants were present on the night of the altercation and participated in the assault in some manner. Further, a police officer testified that Roberts and O'Neal admitted to punching and kicking James. Accordingly, the prosecutor presented sufficient evidence establishing probable cause that defendants assaulted James, enabling Belinda to stab him[1] and thereby performing acts that assisted in the commission of second-degree murder.

Last, the prosecutor presented evidence establishing the intent element of aiding and abetting second-degree murder—that the charged offense was a natural and probable consequence of the commission of the intended offense. *Robinson*, 475 Mich at 15. Although the stabbing caused James's death, the stabbing was the natural and probable consequence of the physical assault administered by defendants. Testimony indicated that the beating was severe[2] and that all three defendants participated in physically assaulting James in some manner. The Michigan Supreme Court has determined that murder can be a natural and probable consequence of an assault, *Robinson*, 475 Mich at 11, and the prosecutor presented adequate evidence of the third element of aiding and abetting with regard to all three defendants, such that a trial was warranted. Again, [w]here preliminary examination evidence conflicts or raises a reasonable doubt regarding the defendant's guilt, the question is properly left to the jury at trial and bindover is required." *People v Honeyman*, 215 Mich App 687, 692; 546 NW2d 719 (1996).

The circuit court seems to have found that the prosecutor did not present evidence establishing the third element of aiding and abetting. In its opinion, the circuit court indicated that the *Robinson* Court "explained that 'a natural and probable consequence of a *plan* to assault someone is that one of the actors may well escalate the assault into a murder.' " *Robinson*, 475 Mich at 11 (emphasis added by the circuit court). Thus, the circuit court found that a common plan is required to hold a defendant responsible for the actions of another, and that *Robinson*'s holding does not "apply to participants in an *unplanned*, essentially reactive altercation" like what occurred in this case. Accordingly, because the prosecutor did not present evidence that defendants participated in an express, prearranged plan to assault James, the circuit court found that the district court improperly bound defendants over on charges of second-degree murder.

The circuit court misread the *Robinson* decision. In *Robinson*, 475 Mich at 4, the defendant joined in a plan with the stated intention of assaulting the victim. After briefly assaulting the victim by striking him twice, the defendant told his codefendant that " 'that was enough,' and walked back to the car." *Id*. However, the codefendant shot the victim after the defendant walked away. *Id*. This Court reversed the defendant's murder conviction because

---

[1] We note that a witness stated that the men assaulting James "disarmed" him and that, when Belinda joined the fight, James no longer had his "stick and pole . . . ."

[2] A neighbor testified that she was scared that "somebody was going to get hurt real bad . . . [b]ecause of the way they was [sic] hitting him, and beating on him." The district court properly acknowledged that the beating was "severe, that there was kicking and continuous[] pounding [on] this gentleman . . . ." The court stated, "I do find that the natural consequences of this was that this man would die, and they are all bound over on second[-]degree murder."

there was no evidence establishing that the defendant was aware of or shared his codefendant's intent to kill the victim, but the Supreme Court found that the defendant was properly convicted because "the charged offense was a natural and probable consequence of the commission of the intended offense." *Id*. at 4, 15. In reaching that conclusion, the *Robinson* Court did state, at one point, that "a natural and probable consequence of a plan to assault someone is that one of the actors may well escalate the assault into a murder." *Robinson*, 475 Mich at 11. However, the Court did not indicate that an express, predetermined plan is a prerequisite for a finding of natural and probable consequences. Rather, the Court indicated that a defendant is responsible for the natural and probable consequences of his *actions*. The *Robinson* Court stated that "a defendant who intends to aid, abet, counsel, or procure the commission of a crime[] is liable for that crime as well as the natural and probable consequences of that crime." *Robinson*, 475 Mich at 3 (emphasis removed). The Court indicated that [o]ne of the natural and probable consequences [of an aggravated assault] is death." *Id*. The Court went on to conclude:

> [A] defendant is liable for the crime the defendant intends to aid or abet as well as the natural and probable consequences of that crime. In this case, the trial court found that defendant intended to inflict great bodily harm. That intent is sufficient for a conviction of aggravated assault or second-degree murder. Alternatively, defendant is liable for the homicide because death is one of the natural and probable consequences of aggravated assault, the crime defendant committed and aided. Either analysis is sufficient to support defendant's conviction . . . .
>
> We hold that a defendant must possess the criminal intent to aid, abet, procure, or counsel the commission of an offense. A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet. Therefore, the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense. [*Id*. at 14-15.]

The *Robinson* Court also stated:

> It cannot be that a defendant can initiate an assault, leave an already infuriated principal alone with the victim, and then escape liability for the murder of that victim simply because the principal shot the victim to death, instead of kicking the victim to death. . . . [A] defendant is criminally liable as long as the crime is within the natural and probable consequences of the intended assaultive crime. [*Id*. at 12-13.][3]

---

[3] Here, the district court properly acknowledged that the beating was "severe, that there was kicking and continuous[] pounding [on] this gentleman . . . ." The court stated, "I do find that

The trial court did not take into account a full reading of *Robinson* and its meaning. We find that *Robinson* supports the bindovers.

The district court properly exercised its discretion in binding defendants over on second-degree murder, and the circuit court improperly quashed the bindover and dismissed the charges against defendants based on a misapplication of law.

Reversed and remanded for further proceedings. We do not retain jurisdiction.


/s/ Michael F. Gadola
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter

---

the natural consequences of this was that this man would die, and they are all bound over on second[-]degree murder."