COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NOAH TANIAL PARKER,

Defendant-Appellant.

UNPUBLISHED
March 27, 2018

No. 335165
Genesee Circuit Court
LC No. 15-037150-FC

Before: MURRAY, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant was convicted by a jury of voluntary manslaughter, MCL 750.321, manufacture of marijuana less than 5 kilograms or fewer than 20 plants, MCL 333.7401(2)(d)(3), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant appeals by delayed leave granted, challenging his upward departure sentence for his voluntary manslaughter conviction.[1] We affirm.

## I. DEFENDANT'S ARREST AND CONVICTION

On October 21, 2014, Flint police received a call that Thomas Baker had been shot at 2715 Seneca, Flint, Michigan. Upon arriving at the scene, the police found Baker lying collapsed at the bottom of a small flight of stairs next to a door leading into the house. Baker had been shot in the head twice. Baker eventually died on scene. Among the numerous items of evidence the police collected at the scene were some marijuana and a machete that was propped up against a wall at the top of a small flight of stairs. The police eventually received a tip that defendant might be involved.

The lead investigator followed up on the tip and contacted defendant, a 19-year-old who lived near Seneca Street, and scheduled a voluntary interview with defendant. At the interview, defendant denied involvement but acknowledged that he had recently bought marijuana from Baker. Sometime after the interview the police received further information that defendant

---

[1] *People v Parker*, unpublished order of the Court of Appeals, entered February 23, 2017 (Docket No. 335165).

might be involved because he had hinted to some friends that he had shot a man twice in the head on Seneca. During this time, defendant had also missed a number of appointments for a second interview with the police and had fallen out of contact with the police. The police eventually obtained a search warrant for defendant's home and found two marijuana plants. Defendant was subsequently arrested at his high school.

The police then conducted a custodial interrogation regarding Baker's murder. Defendant again denied involvement, but eventually admitted he shot and killed Baker after the lead investigator repeatedly pointed out inconsistencies in defendant's story and indicated that the police had evidence implicating him in the crime. Defendant then described that he had shot and killed Baker following a dispute about the quantity of marijuana involved in the drug deal between defendant and Baker. More specifically, defendant indicated that he made arrangements to buy a "half" of marijuana from Baker, but it appeared that Baker had "short[ed]" him. Defendant asked Baker to check the amount and Baker said, "I got you." Baker then went back inside the house and closed the door behind him. When he reopened the door, defendant immediately noticed Baker wielding a machete and heard Baker remark that he did not have to give defendant anything. Defendant, however, was carrying a firearm, so he pushed Baker back, stepped back, and drew his gun. He told Baker to "chill," but according to defendant, Baker advanced and took a step towards him at which point defendant shot Baker in the head. Defendant then indicated that he heard Baker "still kind of moving" and felt him "trying to grab my leg" while defendant was trying to get the machete away from Baker, so defendant shot him in the head again. Defendant stated that he then took the machete, propped it against the wall at the top of the small flight of stairs, and ran. As relevant to this appeal, defendant was originally charged with first-degree premeditated murder, MCL 750.316(1)(a), but the jury acquitted him of this offense and convicted defendant of voluntary manslaughter.

## II. ANALYSIS

At sentencing, the trial court departed upward to a minimum term of 10 years' imprisonment for the voluntary manslaughter conviction. This represented a 34 month departure from the recommended minimum sentencing guidelines range of 43 to 86 months' imprisonment. Defendant's guidelines range was based on a total offense variable (OV) score of 80 and a total prior record variable (PRV) score of 10. See MCL 777.16p (manslaughter is a Class C felony); MCL 777.64 (providing the sentencing grid for Class C felonies).

Defendant now argues that he is entitled to resentencing for two reasons: (1) the trial court relied on impermissible sentencing factors, and (2) the imposed sentence was unreasonable because it violated the principle of proportionality. We will evaluate each argument in turn.

This Court reviews a sentence that departs from the applicable minimum sentencing guidelines range for reasonableness. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) ("*Steanhouse II*"). This Court reviews the reasonableness of a departure sentence for an abuse of discretion. *Id.* A trial court abuses its discretion by imposing a departure sentence that violates the principle of proportionality. *Id.* at 471; *People v Dixon-Bey*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 331499); slip op at 16. The principle of proportionality requires sentences to be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse* (*On Remand*), ___ Mich App ___, ___; ___

NW2d ___ (2017) (Docket No. 318329) ("*Steanhouse III*"); slip op at 2, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

## A. IMPERMISSIBLE SENTENCING FACTORS

First, defendant argues that the trial court relied on impermissible sentencing factors, and thus, resentencing is required. We disagree.

As an initial matter, defendant contends that the trial court based its sentence on an impermissible independent finding of guilt on the first-degree murder charge of which the jury acquitted him. "A trial court may not make an independent finding of guilt and then sentence a defendant on the basis of that finding." *People v Dixon*, 217 Mich App 400, 410; 552 NW2d 663 (1996). However, a trial court may, in determining an appropriate sentence, consider facts "concerning uncharged offenses, pending charges, and even acquittals, provided that the defendant is afforded the opportunity to challenge the information and, if challenged, it is substantiated by a preponderance of the evidence. . . . Further, . . . the trial court may consider . . . evidence admitted during the trial." *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007) (citations omitted). Conduct stemming from an acquittal can be taken into account because "an acquittal does not necessarily mean that the defendant did not engage in criminal conduct, but only demonstrates a lack of proof beyond a reasonable doubt." *People v Harris*, 190 Mich App 652, 663; 476 NW2d 767 (1991). Moreover, the trial court can consider conduct underlying an acquittal as an aggravating factor without turning that consideration into an independent finding of guilt. *People v Shavers*, 448 Mich 389, 393; 531 NW2d 165 (1995).

We disagree with defendant that it was inappropriate for the trial court to consider whether defendant killed Baker with adequate provocation. Specifically, the trial court noted during the sentencing hearing that defendant's claim that he had to defend himself from Baker's use of a machete was implausible, given that the police found the machete out of Baker's reach from where Baker's body lay. In our view, what the trial court did, – highlighting reasonable inferences from the record evidence at trial, was entirely permissible in sentencing defendant. This is quite unlike the issue over which the *Dixon-Bey* Court recently expressed skepticism, i.e., sentencing "a defendant convicted of second-degree murder as though the murder were premeditated." *Dixon-Bey*, __ Mich App at __, slip op at 20. Here, the trial court did not sentence defendant as if he was convicted of a more serious crime. Instead, the trial court considered the evidence regarding the circumstances surrounding the shooting introduced at trial as aggravating factors warranting a higher sentence. See *Shavers*, 448 Mich at 393 ("It is not disproportionate to impose a ten-year minimum sentence for manslaughter, where an unarmed victim was repeatedly shot in the back. Neither is there any basis for the conclusion that the sentencing judge improperly found that the defendant was actually guilty of first-degree murder. As indicated by Judge Murphy, the sentencing judge was making permissible inferences from the evidence introduced at the trial.")

Defendant next argues that the trial court impermissibly based its punishment on defendant exercising his right to present a chosen defense at trial because the trial court found the presented defense "unbelievable[.]" And, defendant argues, the trial court cannot impose additional punishment because it believed defendant lied or otherwise committed perjury. Defendant's arguments regarding these points lack merit. First, the record does not indicate that

the trial court was punishing defendant because he presented a particular defense. Rather, the record shows that the trial court did not believe that particular defense because the machete was found in a location that was inconsistent with the presented defense. Thus, it is clear that the trial court found that defendant's conduct in shooting an unarmed man warranted a higher punishment, not defendant's use of the defense that Baker was armed. Likewise, the record does not indicate that the trial court punished defendant because he lied or provided what the trial court believed was a false account of the events to the police. Rather, it was the underlying *criminal events* that led to the trial court's decision.

Defendant also asserts that the trial court improperly considered defendant's representation by counsel as a justification for the upward departure and improperly considered that defendant would probably file an ineffective assistance of counsel claim against his trial attorney. Defendant's arguments are meritless. The trial court made comments indicating that defendant's trial counsel did an excellent job. However, there is no indication in the record that the trial court departed upward because defendant was represented by counsel. In the course of discussing why defendant had poor judgment, the trial court indicated that defendant should be thankful for the performance of his trial counsel because he could have been convicted of first-degree murder. The trial court then indicated that defendant would likely forget about his attorney's excellent performance and would probably sue the attorney for malpractice or claim ineffective assistance of counsel. According to the trial court, this is what it expected would happen given its characterization of defendant as cold-hearted and where the trial court noted defendant had not internalized the gravity and harm arising from his actions. These comments do not indicate that the trial court was punishing defendant for representation by counsel or because he might file an appeal. Rather, they are tied to the trial court's characterization of defendant as having poor judgment, a cold heart, and a thick skull given that the trial court believed defendant would fail to fully appreciate what his lawyer had done for him and the gravity of defendant's criminal conduct.

Next, defendant argues that the trial court improperly considered defendant's refusal to admit guilt as a basis for departing from the guidelines. Defendant's argument lacks merit. The trial court's comments that defendant would not lose sleep over Baker's shooting, that defendant was cold-hearted, and that defendant was not internalizing the gravity of his actions do not indicate the trial court was punishing defendant because he refused to admit guilt. Rather, the comments indicate that the trial court believed defendant lacked remorse about his criminal conduct and considered it an aggravating factor. This conclusion is reinforced by the trial court's statement that defendant would not be remorseful in prison and its acknowledgment that there was testimony that defendant had bragged about killing Baker. A trial court can properly consider a defendant's lack of remorse as a factor in sentencing. *Dixon-Bey*, ___ Mich App at ___; slip op at 19 n 9.

Defendant also argues that the trial court impermissibly elevated defendant's minimum sentence using judicial fact-finding regarding defendant's acquitted conduct in violation of defendant's rights to a fair trial and due process. However, defendant's argument fails because judicial fact-finding is not constitutionally significant under the now advisory guidelines. See *People v Biddles*, 316 Mich App 148, 160-161; 896 NW2d 461 (2016).

## B. REASONABLENESS OF SENTENCE

Second, defendant argues that the 10 to 15 year upward departure sentence for manslaughter is unreasonable where the trial court (1) relied on impermissible considerations in fashioning its departure sentence and (2) did not adequately explain the extent of the departure. We disagree.

As the Michigan Supreme Court has recently instructed, the "key test" under the principle of proportionality is whether the imposed sentence is "proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse II*, 500 Mich at 472 (quotation marks and citation omitted). The Michigan Supreme Court has also been clear that while the guidelines have been rendered advisory, they "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). Thus, the trial court must take into account the guidelines and consider them in the exercise of its sentencing discretion. *Id*. However, sentences are not to be presumed disproportionate simply because they fall outside the guidelines range. *Steanhouse II*, 500 Mich at 474.

When making a sentencing decision, a trial court must justify its sentence on the record in order to facilitate appellate review. *Lockridge*, 498 Mich at 392. If the trial court departs from the guidelines, "[a]n appellate court must evaluate whether reasons exist to depart from the sentencing guidelines and whether the *extent* of the departure can satisfy the principle of proportionality." *Steanhouse III*, ___ Mich App at ___; slip op at 3. If the trial court fails to provide "adequate reasons for the extent of the departure sentence imposed," then the trial court has abused its discretion in applying the principle of proportionality. *Steanhouse II*, 500 Mich at 476. In determining whether the chosen departure sentence is more proportionate than a different sentence, relevant considerations include: "(1) whether the guidelines accurately reflect the seriousness of the crime, . . . (2) factors not considered by the guidelines, . . . and (3) factors considered by the guidelines but given inadequate weight[.]" *Dixon-Bey*, ___ Mich App at ___; slip op at 18-19 (citations omitted). Other factors to consider "include the defendant's misconduct while in custody, . . . the defendant's expressions of remorse, . . . and the defendant's potential for rehabilitation[.]" *Id*. at ___; slip op at 19 n 9 (quotation marks and citations omitted).

The trial court considered the following factors in sentencing defendant: (1) defendant's exercise of poor judgment in shooting Baker, an unarmed man, twice in the head, (2) defendant's lack of remorse and low potential for rehabilitation, (3) how defendant's callous actions devastated and traumatized Baker's family, (4) the frankly egregious and reprehensible nature of defendant's actions.

As a preliminary matter, we note that defendant is incorrect in asserting that the trial court lacked justification to impose a departure sentence. First, the trial court indicated that defendant's actions in contacting Baker multiple times by way of cellular telephone and meeting up with Baker in an abandoned house to conduct a drug transaction demonstrated poor judgment on defendant's part. The trial court's reasoning in this regard was fueled by its recognition that defendant acted irresponsibly, without thinking of the consequences of his actions where he had ample family support, as well as the support of others in his community, such as his athletic coach. Where the guidelines do not account for consideration of this factor, the trial court properly relied on it when deciding to render a departure sentence.

Second, the trial court indicated that defendant lacked remorse. In particular, it is clearly evident from the record that the trial court was in no way persuaded or impressed by defendant's effusive statements of apology at the sentencing hearing to the trial court or Baker's family for Baker's execution-style death. It was further manifestly clear from the trial court's comments that the trial court found defendant's statements of remorse, responsibility and apology at sentencing to be contrived, manipulative and disingenuous. The trial court was also particularly disturbed by defendant's actions in scheming and plotting to harm a homeless man, who was forced to live in an abandoned house in Flint with no heat at the time of his death. Similarly, it is apparent from a review of the sentencing transcript that the trial court found defendant to have a low potential for rehabilitation, where, following trial and at the sentencing hearing, defendant simply failed to recognize the gravity of this matter, and the seriousness of the offenses of which he was convicted. The trial court also was affronted by defendant's behavior following Baker's death, where he bragged about the murder to Baker's niece, Breasia Baker, styling his actions into a rap song.[2] Additionally, Detective Tiffany Watson of the Flint Police Department described defendant's demeanor during her interrogation of him following Baker's death as cocky and arrogant, and even stated that defendant went so far as to direct the police how to handle their investigation of Baker's death. Moreover, the trial court appeared particularly distressed by defendant's statement at sentencing, attempting to justify his reprehensible conduct in shooting the unarmed[3] Baker twice in the head, where defendant maintained that he needed to carry the firearm used to kill Baker for his own protection in the community. A defendant's lack of remorse is not considered by the guidelines, and thus, it can support the conclusion that a departure is warranted. *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) ("*Steanhouse I*"), overruled on other grounds by *Steanhouse II*, 500 Mich at 459-460, citing *Houston*, 448 Mich at 323. A defendant's low potential for rehabilitation is also a proper consideration in rendering a departure sentence. *Dixon-Bey*, ___ Mich App at ___; slip op at 19 n 9. Consequently, the trial court's apt recognition that defendant lacked remorse for this execution-style killing, and that he was not likely to rehabilitate, were factors properly taken into account when it decided to depart from the guidelines.

The trial court also stated that defendant devastated and traumatized Baker's family. We acknowledge that the guidelines account for psychological harm to a victim's family through OV 5. That variable measures "psychological injury to a member of a victim's family." MCL 777.35(1). The trial court scored OV 5 at 15 points, which is the maximum score under that variable. MCL 777.35(1). A trial court must assess 15 points if "[s]erious psychological injury

---

[2] According to Breasia Baker, defendant stated, while walking past Thomas Baker's home, "Let me show you all my trophy, I killed this n***** two shots to the head." Defendant also rapped in Breasia Baker's presence that the police might "get [him] for somethin' that happened October twenty-somethin'."

[3] The trial court's conclusion that Baker was unarmed was grounded in the record evidence, where a machete was located at the top of a stairway outside of Baker's reach. Additionally, the guidelines do not account for Baker's lack of a firearm.

requiring professional treatment occurred to a victim's family[.]" MCL 777.35(1)(a). Because the guidelines account for psychological harm to a victim's family, the trial court must explain why the guidelines inadequately considered that factor before departing on that basis; otherwise, that factor is not a reasonable ground for departing from the guidelines. *Steanhouse III*, ___ Mich App at ___; slip op at 4; *Dixon-Bey*, ___ Mich App at ___; slip op at 19. It is evident to us that the trial court determined that the scoring of OV 5 was inadequate to account for the circumstances of this case where multiple members of Baker's family, including three of his daughters, his brother and his sister-in-law all testified at the sentencing hearing regarding the devastating impact that Baker's senseless death had on their family. Notably, the trial court found it particularly disturbing that Baker's one-year-old son was left without a father and that he did not live to see his new grandchildren.

While defendant contends that the trial court could not consider the egregious nature of Baker's shooting or the brutality of his killing by two gunshots to the head, we disagree with this assertion. Specifically, while OV 7 contemplates "aggravated physical abuse" it does so where the defendant engages in conduct "designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(a). We are not persuaded by defendant's argument that the plain language of OV 7 encompasses the callous circumstances at issue here that led to Baker's death. Similarly, while OV 1, for which defendant was assessed 25 points, addresses "aggravated use of a weapon[,]" and OV 2, for which defendant was assessed 5 points, contemplates a weapon's "lethal potential[,]" we are not persuaded by defendant's assertions that OVs 1 and 2 adequately contemplate what happened in this case, where defendant used a firearm to shoot Baker not once, but twice, in the head. MCL 777.31; MCL 777.32.[4] Thus, the trial court properly considered the fact that Baker was shot twice in the head when deciding whether to depart from the guidelines.

Defendant next argues that the trial court violated the principle of proportionality by failing to adequately explain the extent of its chosen departure sentence.

As discussed above, the trial court's upward departure sentence was permissible on the basis of the trial court's conclusions that defendant lacked remorse, demonstrated a low potential for rehabilitation, exercised poor judgment and engaged in egregious and reprehensible behavior in Baker's shooting death. As the *Steanhouse II* Court stated, the prevailing inquiry when reviewing the trial court's sentence is whether it met the principle of proportionality. *Steanhouse II*, 500 Mich at 472. Specifically, we must determine whether defendant's upward departure sentence was proportionate to the seriousness of the case, as opposed to focusing our inquiry on whether the trial court departed from the guidelines' recommended range. *Id*. The present case is a very serious one indeed. The record evidence established that defendant, after repeatedly contacting Baker by way of cellular telephone to arrange a drug transaction, travelled to the abandoned home where Baker was living and that defendant was armed with a firearm. While

---

[4] Similarly OV 3, which addresses "physical injury to a victim[,]" MCL 777.33, and where defendant received 25 points for killing Baker, does not adequately contemplate the scenario at issue here, where defendant shot Baker twice in the head.

the exact details of what happened next are unclear, according to defendant, he fired two shots into Baker's head to protect himself from Baker before fleeing the scene. At sentencing, the trial court questioned whether defendant's apology to Baker's family, as well as his expressions of remorse, were genuine, particularly given the cold and callous nature of this shooting. The trial court also noted that defendant bragged about the shooting, going so far as to rap about it to Baker's niece, not knowing that she was a blood relative of Baker. The record evidence further established that defendant, in a cocky and arrogant manner, directed the police how to handle the investigation into Baker's death,[5] and that he showed no remorse during his interrogation. The trial court's understandable outrage at the callous circumstances of this shooting, and defendant's inhumane behavior following the shooting, clearly informed its decision to depart upward to impose a sentence of 10 to 15 years of imprisonment, and on this record we are satisfied that the trial court's decision did not amount to an abuse of discretion. On this detailed and thorough record that the trial court provided during the sentencing hearing, we also reject defendant's contention that the trial court did not provide sufficient reasoning to support the *extent* of the departure sentence. *Steanhouse II*, 500 Mich at 476; *Dixon-Bey*, ___ Mich App at ___; slip op at 19. Put another way, we agree with the trial court's determination, for the reasons set forth on the record in the trial court and also addressed in this opinion, that the sentence the trial court imposed was more proportionate to defendant and this offense than a sentence within the advisory guidelines range would have been. *Id*.

### III. DEFENDANT'S CLAIM OF PERSONAL ANIMUS ON THE PART OF THE TRIAL COURT

Given our disposition of this appeal, we need not address defendant's remaining claim that the trial court demonstrated personal animus against him. However, we take this opportunity to note that, while the trial court used strong language in sentencing defendant, our objective review of the record does not support defendant's claim of even the " 'probability of actual bias on the part of the [trial court].'" *Rippo v Baker*, ___ US ___, ___; 137 S Ct 905; 197 L Ed 2d 167 (2017), quoting *Withrow v Larkin*, 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975).

Affirmed.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood

---

[5] Detective Watson described defendant's demeanor as "theatrical[,]" and ever-changing, and testified that she felt like she "was being hustled." Detective Watson also described defendant as very "matter of fact" when he told her that he shot and killed Baker. Notably, defendant did not show any emotion until he was told that he may not be able to complete his schooling.