# Court of Appeals, State of Michigan

## ORDER

People of MI v George Michael Mack

Docket No.    336282

LC No.    2015-001096-FC

Amy Ronayne Krause
Presiding Judge

Jane E. Markey

Michael J. Riordan
Judges

The Court orders that the motion for reconsideration is GRANTED, and this Court's opinion issued May 17, 2018, is hereby VACATED.  A new opinion is attached to this order.

/s/ Amy Ronayne Krause

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

August 14, 2018
Date

Chief Clerk

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

GEORGE MICHAEL MACK,

          Defendant-Appellant.

UNPUBLISHED
August 14, 2018

No. 336282
Kalamazoo Circuit Court
LC No. 2015-001096-FC

ON RECONSIDERATION

Before: RONAYNE KRAUSE, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant, George Michael Mack, appeals by right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a); two counts of carrying or possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b; possession of a firearm while ineligible to do so (felon-in-possession), MCL 750.224f; aggravated stalking, MCL 750.411i; and first-degree felony murder, MCL 750.316(1)(b). The trial court sentenced defendant to serve life without the possibility of parole each for his first-degree murder convictions, to serve 6 to 10 years in prison each for his convictions of felon-in-possession and aggravated stalking, and to serve two years in prison each for his convictions of felony-firearm. On appeal, defendant raises several claims of error that he argues warrant a new trial. For the reasons explained below, we affirm.

I. BASIC FACTS

Defendants' convictions arise out of incidents involving his girlfriend, Erica Bell, which occurred in July and August 2015, and culminated in the shooting death of Erica's brother, Edward Bell, on August 9, 2015.

Testimony and evidence established that defendant came to the home that he and Erica had previously shared on 1330 North Rose Street in Kalamazoo, Michigan. Edward, Erica, and their mother's boyfriend, Nathanael Moore, were cleaning and repairing the home after someone trashed it. Erica felt that defendant caused the damage and wanted to change the locks and alarm code. Erica and defendant argued, and Edward intervened.

-1-

The evidence showed that defendant left the home and returned minutes later with an AK-47 assault-style rifle. He entered the home at the side door where Moore was changing the lock, told Moore that the dispute did not involve him, and Moore retreated to the driveway. Defendant then confronted Edward and Erica, who were standing in the kitchen. After a brief conversation, defendant fired several shots into the kitchen. Evidence showed that one bullet struck Edward in the back and perforated his lung. Another bullet blasted through his arm. Edward crawled out onto the deck behind the home and died.

## II. GRUESOME IMAGES

### A. STANDARD OF REVIEW

Defendant first argues that the trial court erred when it allowed the prosecutor to admit images of Edward's body at the scene of the shooting. He maintains that the images were gruesome and that the prosecutor only sought their admission for their shock value. This Court reviews de novo whether the trial court properly interpreted and applied the rules of evidence. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). This Court reviews a trial court's decision to allow the admission of evidence for an abuse of discretion. *Id*. A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Id*. A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law. *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009).

### B. ANALYSIS

Relevant evidence is generally admissible. *Id*.; MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

The images at issue depicted Edward as he appeared when he died at the scene of the shooting. The images showed the extent of his injuries, including the size of the entry and the exit wounds and the extensive loss of tissue caused by the bullet that struck his arm. The images also visually depicted Edward's loss of blood.

The images were relevant to corroborate Sergeant Aaron Wiedbrauk's recollection of Edward's state when he arrived just moments after the shooting. Corroboration of Wiedbrauk's description of Edward's condition made it more likely that he accurately recalled other details, such as seeing a man other than Moore pacing in front of the home and fleeing through the yard in the direction of Burdick Street. The images had a minimal tendency to bolster Wiedbrauk's credibility. See *People v Layher*, 238 Mich App 573, 579-580; 607 NW2d 91 (1999) (stating that evidence implicating a witness' credibility is almost always relevant).

The images similarly corroborated Specialist Gary Latham's testimony concerning the reconstruction of the crime scene. He testified at length about how he determined the origin and trajectory of the shots that were fired. He opined that two impact sites were likely the points of impact for the bullets that struck Edward. He came to that conclusion in part on the basis of the blood splatter and tissue associated with those impact sites.

The images of the exit wound on Edward's chest as it appeared at the time of his death strongly supported an inference that Edward had turned his back to the shooter and was fleeing when he was shot. The image also suggested that the bullet would have projected blood splatter on a nearby surface when exiting Edward's chest even though he wore a shirt. Likewise, the photo of the injury to Edward's arm visually depicted the loss of tissue that Edward suffered from that bullet, which tissue necessarily went somewhere after the bullet tore through Edward's arm. Accordingly, the images served as a visual aid to help the jury understand Latham's testimony and corroborated his recitation of the factual bases for his opinion. See *People v Mills*, 450 Mich 61, 72-74; 537 NW2d 909 (1995) (providing that images of a victim's injuries may be relevant to corroborate a witness' testimony).

Latham also discussed Edward's loss of blood and used the blood evidence to offer testimony about Edward's last moments and his continued effort to get away from the shooter before he collapsed and died. The images added considerable weight to Latham's conclusion that Edward had been facing away from the shooter's location and toward the exit to the backyard when the shooter fired the shots that struck him. That is, the images tended to suggest that Edward was fleeing when he was shot and that he suffered grievous injuries that quickly incapacitated him. The images helped the jury to understand that Edward likely could not have taken any steps to conceal a weapon—had he had one—and that any such weapon would likely be covered in the blood. See *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) (stating that, if evidence is relevant, it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences).

Taken together, the images were highly relevant to the jury's understanding of the circumstances surrounding the shooting and with the other testimony and evidence supported an inference that Edward was unarmed and trying to flee when the shooter gunned him down. See *id.* Accordingly, the evidence was relevant and admissible. See MRE 401; MRE 402.

Relevant evidence may be excluded despite MRE 402 if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. Nevertheless, "[a]ll evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *Mills*, 450 Mich at 75. So the fact that the images at issue were gruesome did not of itself require exclusion. *Id.* at 76. Rather, the inquiry was whether the probative value of the images was substantially outweighed by the danger of unfair prejudice. *Id.*

As discussed, the images provided context and support for Wiedbrauk's and Latham's testimony. And the autopsy images were likely a poor substitute for the images depicting Edward's condition immediately after the events at issue. Autopsy images depict a corpse in a somewhat sanitized and clinical setting that removes many of the corroborating details. As such, the autopsy images were less probative than the depiction of Edward's body as it was when found. Moreover, the natural revulsion occasioned by the images from the scene did not warrant exclusion. Cf. *People v Turner*, 17 Mich App 123, 132-133; 169 NW2d 330 (1969) (opining that autopsy images should be scrutinized more than images from the scene of the crime or of the victims' bodies because jurors are generally capable of rationally viewing images from the scene). The images taken immediately after the events at issue were also not particularly gruesome. Even the close up images of Edward's injuries did not involve such untoward detail

that a reasonable juror would be unable to fairly assess their probative value. That is, there was no danger that "evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." *Id.* at 75-76 (quotation marks and citation omitted). Therefore, the trial court's decision to allow the images was within the range of reasonable and principled outcomes. See *Yost*, 278 Mich App at 353.

## III. OTHER ACTS TESTIMONY

### A. STANDARD OF REVIEW

Defendant next argues that Officer Tim Millard should not have been allowed to testify about his previous interactions with defendant. He also maintains that defense counsel's failure to object amounted to ineffective assistance of counsel.

This Court reviews de novo whether the trial court properly interpreted the rules of evidence and the trial court's ultimate decision to allow or exclude evidence for an abuse of discretion. *Roper*, 286 Mich App at 90-91. But because defendant failed to preserve this claim of error, this Court's review is limited to determining whether there was a plain error that affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To establish a plain error that warrants relief, defendant must show that the error was plain or obvious and affected the outcome of the lower court proceedings. *Id.* This Court reviews de novo whether defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and, if so, whether there is a reasonable probability that but for counsel's error, the result of the proceedings would have been different. *Yost*, 278 Mich App at 387.

### B. ANALYSIS

Although evidence of a person's character is often relevant, because there is a significant danger that the jury will overestimate the probative value of character evidence, the rules of evidence strictly limit both the circumstances under which character evidence may be admitted and the types of character evidence that may be admitted. *Roper*, 286 Mich App at 91. A party may not, for that reason, present evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). Evidence of other crimes, wrongs, or acts, may, however, be admissible to prove something other than action in conformity with character. See MRE 404(b)(1) (stating that evidence of other acts may be admitted for other purposes and listing examples); *Roper*, 286 Mich App at 92.

Although MRE 404(b) generally prohibited the prosecutor from presenting evidence of defendant's criminal record, the prosecutor had to present evidence that defendant was ineligible to carry or possess a firearm as a result of a prior conviction in order to establish the elements of the felon-in-possession charge. See *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). Absent a stipulation by defendant that he had a prior felony conviction, the prosecutor could present evidence to establish that he had such a conviction. *People v Nimeth*, 236 Mich App 616, 627; 601 NW2d 393 (1999).

Our Legislature has determined that a prosecutor may present evidence that the defendant engaged in other acts of domestic violence in order to prove a charge involving domestic

violence. See MCL 768.27b(1). Accordingly, the prosecutor could also present evidence in this case that defendant had engaged in acts of domestic violence to prove the charge of aggravated stalking. See MCL 768.27b(5)(a)(*iv*) (defining domestic violence to include engaging in activity against a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, harassed, or molested); MCL 768.27b(5)(b)(*iii*) (defining a family or household member to include a person with whom the defendant has a child in common).

At trial, the jury heard that police officers had responded to the home that defendant had once shared with Erica for calls involving domestic violence and that one call involved a firearm. Erica also informed the jury without objection that defendant sold illegal narcotics for a living and had owned numerous firearms. Thus, the jury had information that defendant had engaged in illegal activities and that he routinely carried or possessed firearms, which included an assault-style weapon that was seized by officers during an incident of domestic violence.

After this testimony, Millard testified that he had patrolled the area where Erica and defendant lived and that he had been involved with a law enforcement team that specialized in drug and weapon offenses. Millard testified with respect to the domestic violence incident that Erica described as having happened on July 4, 2015. He stated that he did not respond to 1330 North Rose, but instead went to defendant's home address on Burdick Street. He explained that he knew where defendant lived from patrolling and from previous contact with him.

The trial court asked Millard on behalf of the jury how he knew defendant and "what interactions had you had?" Milliard stated in reply:

> I patrol that area quite frequently, specifically the 1300 block of North Burdick is a predominantly busy area for drug related offenses and activity of that nature.

> At a current time—or at a previous time then the day of July 4th, [defendant] has been on probation or parole status.

> I've been involved in two searches at his home in reference to allegations that had been received to their office of which involved drug or weapons offenses at the home that he would be in violation of for a probation or parole status. From that information, if probation or parole officer would respond to the home with the assistance of us and conduct a search of the home per the conditions of that situation. On both times we went there on that information, we did not locate guns, did not locate weapons, it was merely information that they had received and were doing a check on to validate that information.

> I've dealt with [defendant] before in the area for driving on a suspended license status but I take pride in the fact that when I patrol a particular area and specifically the area that I work, that block there, it's imperative that I know the people that are living in those specific neighborhoods. And when it comes to problem area specifically that block, the 1300 block of North Burdick, it's imperative that I know and can distinguish between the neighbors and the homes and the residences for specific incidences in relation to what we're dealing with

-5-

here today. In relation to knowing the information of a potential suspect involved in a home at 1330 North Rose Street and the relations of the males and females that reside at that home to knowing where they reside in proximity to that scene, being imperative to the apprehension of a suspect by letting officers know seconds of this call going out that this would be an area or a home of interest as that is where in fact resides for those officers who were responding that aren't familiar or don't know the area specifically.

On appeal, defendant argues that Millard's testimony was inadmissible, highly prejudicial, and could not be cured with a jury instruction. Specifically, he maintains that Millard implied that defendant was one of the criminals in the neighborhood, had been involved in past criminal activities, and was involved with drugs and weapons. Defendant also complains that it was entirely irrelevant that Millard had searched defendant's home and caught him driving on a suspended license.

Millard did not testify that defendant was a neighborhood drug dealer. To be sure, he stated that defendant lived in a neighborhood that was known for drug and weapon offenses, but he did not state that defendant himself had been caught with drugs or illegal weapons. Rather, he stated that he took pride in knowing the residents of that neighborhood, where they resided, and the relationships between the "males" and the "females" such that he could make possible connections between homes "of interest" in "proximity" to a particular scene and give information to his less knowledgeable coworkers regarding a "potential suspect." This testimony did not involve improper character to propensity evidence. See *People v VanderVliet*, 444 Mich 52, 63; 508 NW2d 114 (1993) ("If the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible.").

In addition, Millard did not testify that he knew that defendant had actually been involved with drugs and weapons. Although his answer was not the model of clarity, Millard never stated that he observed defendant with drugs or weapons. He related that defendant had been on parole or probation and that he knew him and his residence because he twice helped defendant's parole officer search defendant's home after someone made "allegations" that defendant had drugs or weapons in violation of the conditions on his parole. He clarified that they did not find evidence to "validate" the allegations during the searches. Thus, although Millard did let slip that defendant was on parole before the parties submitted the stipulation to the jury, he did not offer any testimony that defendant had in fact committed any drug or weapon offenses. He simply related that he had participated in searches after someone accused defendant of possessing drugs or weapons.

To the extent that this testimony could be said to involve improper other-acts evidence, see MRE 404(b)(1), we note that the improper testimony involved the fact that defendant was on parole at some point in the past and that someone had made allegations against him that were not validated. Because the parties intended to offer a stipulation that defendant had been previously convicted of a felony, and it is common knowledge that felons are frequently paroled with conditions, any prejudice occasioned by Millard's testimony that defendant had been on parole was minimal. Moreover, Millard did not specifically identify the offense or offenses for which defendant was on parole. He did testify generally that someone had alleged that defendant

-6-

possessed drugs or weapons, but he also indicated that they did not find any drugs or weapons after they searched his home. Further, others testified that officers found heroin in the residence at 1330 North Rose, that the heroin belonged to defendant, and that he sold it. Millard's testimony about the character of the neighborhood and the allegations against defendant while he was on parole were, when compared with that testimony, not particularly prejudicial. Millard did improperly inform the jury about one other act: that defendant had driven on a suspended license. Nevertheless, Millard's statement about defendant's suspended license—although irrelevant—did not involve the kind of prejudice that might cause the jury to act out of bias.

When considered as a whole, we conclude that Millard's response touched on improper other-acts evidence and, for that reason, the trial court plainly erred to the extent that it allowed Millard to digress into other acts and otherwise failed to address his improper response with a jury instruction. But when considered in light of the evidence that had already been adduced and the fact that the parties intended to stipulate that defendant had a felony conviction, we further conclude that any prejudice was insignificant and paled by comparison to the strong evidence of defendant's guilt. Consequently, the trial court's failure to limit Millard's answer or to give the jury a limiting instruction on its own initiative did not affect the outcome of the trial. See *Carines*, 460 Mich at 763. For the same reason, defendant's trial counsel's failure to object or request a limiting instruction did not amount to ineffective assistance of counsel.

To establish a claim of ineffective assistance of counsel, defendant must show that trial counsel's failure to object or request a curative instruction fell below an objective standard of reasonableness under prevailing professional norms and whether there is a reasonable probability that without this error, the result of the proceedings would have been different. *Yost*, 278 Mich App at 387. The jury already heard evidence that defendant was involved with drugs and incidents of domestic violence, and Millard's rambling answer to the jury question did not involve specific allegations that defendant had been involved with drugs or illegal weapons. Indeed, he stated that they were unable to validate the allegations that defendant had drugs or weapons. On this record, even if a reasonable trial lawyer in defense counsel's position would have objected and requested a curative instruction, the prejudice occasioned by Millard's answer was not such that it had any effect on the jury's verdict. See *id.*

Defendant has not demonstrated that Millard's testimony or defense counsel's failure to object to Millard's testimony amounted to error that warrants a new trial.

## IV. EVIDENTIARY HEARING

### A. STANDARD OF REVIEW

Defendant next argues that the trial court abused its discretion when it denied his request to hold an evidentiary hearing to determine why his defense counsel chose not to present the defense of alibi or the defense of self-defense at trial. This Court reviews a trial court's decision whether to grant a motion for an evidentiary hearing for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). A trial court abuses its discretion when it selects an outcome that it outside the range of reasonable and principled outcomes. *Id.* at 217.

### B. ANALYSIS

The defendant has the burden to establish the factual predicate for his or her claim that defense counsel provided ineffective assistance. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Thus, it may be necessary for the trial court to hold an evidentiary hearing on a claim of ineffective assistance when a defendant has a potentially meritorious claim but the factual record is insufficient to resolve the claim. See *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973). The defendant bears the burden to demonstrate the need for an evidentiary hearing to establish facts that would advance his or her position. See *People v McMillan*, 213 Mich App 134, 142; 539 NW2d 553 (1995). To meet that burden, the defendant must make an offer of proof that establishes the need for an evidentiary hearing. See MCR 7.211(C)(1) (stating that a motion for an evidentiary hearing filed in the Court of Appeals must be supported by an affidavit or other proof regarding the facts to be established); *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007) (providing that the defendant must set forth facts that demonstrate the need for an evidentiary hearing); *People v Armstrong*, 124 Mich App 766, 771-772; 335 NW2d 687 (1983) (stating that the defendant must proffer factual support for his claim that defense counsel knew about a viable defense and failed to present it).

In May 2017, defendant moved for a new trial or an evidentiary hearing on the ground that his trial counsel provided ineffective assistance. Specifically, he alleged that defense counsel filed a notice of intent to present an alibi defense and a notice of intent to present the defense of self-defense. He argued that it was necessary to hold an evidentiary hearing to determine why defense counsel failed to present either defense because there was no record evidence as to why he chose not to present the defenses.

Defendant submitted an affidavit in support of his motion for an evidentiary hearing. He averred that he went to the residence at 1330 North Rose and was told to leave. After Erica began throwing dirt at his Cadillac, he moved his car to his grandmother's house, which was around the corner. He then returned to the house to retrieve some money. He claimed that Erica and Edward confronted him as he was going upstairs, and Edward punched him. He further averred that he ran from the living room when Edward pulled out a .38 caliber revolver and began firing at him. Defendant claimed that he retrieved the AK-47 from under the kitchen sink, by which time Edward was standing at the back door with the revolver. He then shot Edward with the AK-47 out of fear for his life.

Defendant's affidavit did not establish a question of fact that needed to be resolved with an evidentiary hearing. As the trial court recognized at the hearing on defendant's motion, defendant essentially abandoned his claim that he had a viable alibi defense. Defendant's averments establish that there was no factual dispute that he was at 1330 North Rose during the time at issue and that he shot Edward with an AK-47. Given his averments, there were no factual developments that could show that defense counsel could have presented a viable alibi defense. See *People v Holland*, 179 Mich App 184, 192; 445 NW2d 206 (1989). Defense counsel cannot be faulted for failing to present a meritless alibi defense. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).

Defendant's self-defense claim was also meritless under the facts stated in his affidavit. As the prosecutor correctly notes on appeal, defendant did not have the legal right to be in the home on 1330 North Rose because he was prohibited from being there as a condition of his release on bond; indeed, he was likely committing a crime—stalking, see MCL 750.411i(2)(b)—

by entering the home for a second time after having been told to leave.  As such, he could not present statutory self-defense as a defense to murder.  See MCL 780.972(1) (providing that a person may use deadly force if he or she is not engaged in a crime at the time he or she uses deadly force and may use deadly force anywhere he or she has the legal right to be).

Even assuming that defendant could have asserted a common law claim of self-defense, see *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010), defendant failed to establish that there was need to investigate defense counsel's failure to pursue that defense. Notwithstanding defendant's affidavit, the evidence at trial established that defendant left the home after a verbal dispute and threats of physical violence.  The evidence showed that he then returned with an AK-47, told Moore that he did not need to get involved, and proceeded to gun down Edward.  The forensic evidence showed that defendant shot Edward in the back as he ran from the kitchen and that he survived only long enough to crawl to the stairs leading down from the deck.  Testimony and evidence established that Edward did not have the .38 caliber revolver found at the home in his possession and that the revolver was not loaded.  There was also no evidence that a .38 caliber revolver had been fired anywhere in the house.  The evidence showed that police officers arrived within minutes and that Moore and Erica did not have the opportunity to alter the crime scene to conceal evidence that Edward was armed or even coordinate their stories and agree to frame defendant.

Given the overwhelming evidence contradicting defendant's claim of self-defense, the trial court had no obligation to hold an evidentiary hearing to ascertain why defense counsel chose not to pursue that defense.  See *Williams*, 275 Mich App at 200.  On the record before the trial court, the claim of self-defense was so patently lacking in merit that the trial court could reasonably conclude—as it did—that defense counsel made a strategic decision to forgo that defense without the need to question defense counsel at an evidentiary hearing.  See *Riley*, 468 Mich at 140 ("the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy").  Indeed, the evidence so firmly contradicted defendant's version of events that it is arguable that no reasonable lawyer in defense counsel's position would have presented the defense of self-defense.

The trial court did not abuse its discretion when it determined that defendant had not established the need for an evidentiary hearing on his claim of ineffective assistance of counsel. See *Unger*, 278 Mich App at 217.

## V.  INEFFECTIVE ASSISTANCE AT PLEA NEGOTIATION

In a brief submitted on his own behalf, defendant next argues that he did not receive effective assistance of counsel during the plea-bargaining process.

"[A] defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014).  To establish ineffective assistance of counsel in the plea-bargaining context, defendant must show that defense counsel's representation fell below an objective standard of reasonableness and that the outcome of the plea process would have been different with competent advice.  *Id.* at 592. Notably, defendant bears the burden of showing that he would have accepted the plea, that the

prosecutor would not have withdrawn the plea, that the trial court would have accepted the terms, and that the terms would have been less severe than under the judgment of sentence. *Id.*

On appeal, defendant avers that defense counsel never informed him that the prosecutor had offered him a plea deal. He further avers that he would have accepted the plea offer and maintains that had he been able to accept the plea offer, his highest possible minimum sentence would have been 25 years rather than life without the possibility of parole.

The only evidence that the prosecutor had offered a plea agreement appeared in a pretrial notice filed with the trial court at the time of the pretrial hearing. Under a section titled "OFFERS," someone hand wrote, in relevant part: "Plead Ct 1 and Ct 2 Dr Remainder." On the notice, someone also checked the box indicating that defendant was present at the pretrial hearing, and the record shows that he was present at that hearing. Additionally, the record shows that defendant's regular trial counsel was not present at this hearing, but that another lawyer appeared on his behalf. Defendant has not averred or otherwise established that he did not review the pretrial notice at that time or that substitute counsel did not advise him about the offer that appears on that notice. He only averred that his regular trial counsel did not advise him of the offer. Consequently, on this record, he has not established that defense counsel knew about the offer or otherwise deprived him of the opportunity to accept the offer as a result of his failure to properly advise him about it. See *Douglas*, 496 Mich at 592 ("The defendant has the burden of establishing the factual predicate of his ineffective assistance claim.").

Defendant has also not shown that he would have accepted the plea offer—despite his averments to the contrary. Defendant claims that his maximum minimum sentence under the offer would have been 25 years in prison, but the plea offer indicated that defendant had to plead guilty to Count 1, which was open murder. When a defendant pleads guilty to open murder, the trial court must "proceed by examination of witnesses to determine the degree of the crime, and shall render judgment accordingly." MCL 750.318. Had defendant pleaded guilty to open murder, the trial court could have heard testimony about the circumstances of the shooting and found that the appropriate degree was first-degree premeditated murder. See *People v Watkins*, 468 Mich 233, 238-239; 661 NW2d 553 (2003). Indeed, given the overwhelming evidence of guilt, it was probable that the trial court would have found that defendant committed first-degree murder in the absence of a specific agreement to plead to second-degree murder. As such, the trial court would have been obligated to sentence defendant to life without the possibility of parole. See MCL 750.316(1). Defendant has not his burden of showing that he would have accepted the offer that was actually made.

For the same reason, defendant cannot show that the sentence he received—life without the possibility of parole—was more severe than the sentence he would have received under the plea offer because there was a high probability that a plea to the charge of open murder would have resulted in the same sentence, and the prosecutor's agreement to drop the remaining charges would not have altered the minimum term of his imprisonment. See *Douglas*, 496 Mich at 592.

Defendant has not shown that defense counsel's handling of the prosecutor's plea offer amounted to ineffective assistance of counsel.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Defendant also argues on his own behalf that his appellate counsel was ineffective.

A defendant has the right to the effective assistance of appellate counsel in his first appeal by right. See *People v Caston*, 228 Mich App 291, 304; 579 NW2d 368 (1998). The test for ineffective assistance of appellate counsel is the same as that for trial counsel: the defendant must show that his or her appellate counsel's "decision not to raise a claim . . . fell below an objective standard of reasonableness and prejudiced his [or her] appeal." *People v Uphaus (On Remand)*, 278 Mich App 174, 186; 748 NW2d 899 (2008).

Defendant generally argues that his appellate counsel did not provide effective assistance by failing to raise "trial errors," but only identifies two claims of error that he feels should have been brought. He states that appellate counsel should have raised a claim that his trial counsel provided ineffective assistance by failing to advise him of the plea offer and should have raised a claim of ineffective assistance premised on defense counsel's decision to proceed to trial "without having a defense theory with readily available witnesses, and not holding the prosecution to its heavy burden of proof." Defendant has abandoned his claim that appellate counsel provided ineffective assistance by failing to identify the "trial errors" that he claims should have been raised on appeal. See *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006). Likewise, by failing to offer any meaningful discussion of defense counsel's actual arguments and performance at trial and how appellate counsel might have demonstrated that defense counsel's performance was deficient, defendant has abandoned his claim that appellate counsel should have raised the two claims involving ineffective assistance of trial counsel. *Id.*

Further, as already discussed, the record does not support defendant's claim of ineffective assistance premised on his defense counsel's purported failure to advise him of the prosecutor's plea offer. Defendant failed to show that he would have accepted the offer actually made and failed to show that the sentence he would have received would have been less severe than the sentence after his jury verdict. As such, defendant cannot show that appellate counsel's failure to bring that claim affected the outcome of his appeal. See *Uphaus*, 278 Mich App at 187.

Finally, it is evident that trial counsel had a defense theory at trial even though he chose not to present the defenses of alibi or self-defense. Defense counsel argued that the prosecution had not established guilt beyond a reasonable doubt because it was plausible that Moore shot and killed Edward. As this Court has explained, "[a]ppellate counsel may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *Id.* at 186-187. In the absence of evidence tending to show that defense counsel's decision was not a matter of sound trial strategy, appellate counsel could reasonably conclude that defendant would be more likely to prevail on a claim that the trial court erred when it denied the motion for an evidentiary hearing. As such, defendant has not overcome the presumption that his appellate counsel's decision was itself a matter of sound strategy. See *id.* at 186.

## VII. RIGHT TO TESTIFY

Just before oral argument on this case, this Court permitted defendant to file a second supplemental appellate brief. Defendant argues that he was denied his right to testify at trial,

wrapping this assertion in a claim of ineffective assistance of counsel. Defendant also asserts other claims of ineffective assistance of counsel that are either patently meritless or have already been discussed and rejected by this Court. Regarding his main argument, defendant asserts that his counsel never advised him of his right to testify, and that he never knowingly, voluntarily or intelligently waived his right to testify. Consequently, defendant claims he was denied his constitutional right to testify in support of his claim of self-defense.

Defendant does not support these assertions with either his own affidavit or an affidavit of trial counsel. As such, defendant has failed to establish the factual predicate of his claim of ineffective assistance of counsel. See *Carbin*, 463 Mich at 600-601. Moreover, calling witnesses and the presentation of evidence are matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Defendant has not overcome the strong presumption that not presenting defendant's testimony was reasonable trial strategy. See *Riley*, 468 Mich at 140. Further, because defendant asserts that his testimony would have supported his self-defense claim and because this Court, based on defendant's own affidavit submitted with his motion for an evidentiary hearing, has already determined that defendant's self-defense claim was meritless, defendant cannot establish that he was prejudiced by his failure to testify.

Additionally, defendant's underlying claim that he was denied his constitutional right to testify also does not merit relief. Defendant asserts that the record does not reflect his affirmative waiver of his right to testify, but defendant points to no part of the record that shows he expressed to the trial court his alleged desire to testify on his own behalf. While a criminal defendant has a due process right to testify at his or her own trial, a waiver of this right is not required to be on the record. *People v Simmons*, 140 Mich App 681, 684; 364 NW2d 783 (1985). A defendant must claim his right to testify, without query from the trial court, or defendant is deemed to have waived the right. *Id*. at 684-685, citing *United States v Ives*, 504 F2d 935, 939-940 (CA 9, 1974). A defendant waives his right to testify if he or she "decides not to testify or acquiesces in his attorney's decision that he not testify[.]" *Simmons*, 140 Mich App at 685 (citation omitted); see also *People v Harris*, 190 Mich App 652, 661-662; 476 NW2d 767 (1991). In this case, defendant waived his right to testify by not affirmatively expressing a desire to do so. *Harris*, 190 Mich App at 661-662; *Simmons*, 140 Mich App at 684-685. And, as noted, defendant cannot establish that he was prejudiced by failing to testify regarding his meritless claim of self-defense.

The remaining claims defendant presents in his second supplemental brief are either patently meritless or have already been considered and rejected by this Court. There were no errors warranting a new trial.

We affirm.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Michael J. Riordan

-12-