# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

THOMAS CHRISTOPHER SCHWEIZER,

Defendant-Appellant.

UNPUBLISHED
December 13, 2018

No. 340511
Oscoda Circuit Court
LC No. 15-001409-FC

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) or (b)(*i*) (victim under 13 or between 13 and 16 years of age and a member of the same household). Defendant was sentenced, as a third-offense habitual offender, MCL 769.11, to 150 months to 30 years' imprisonment. We affirm defendant's conviction and sentence, but remand to the trial court to articulate a factual basis for the court costs.

## I. RELEVANT FACTUAL BACKGROUND

This case arises out of defendant's sexual abuse of his stepdaughter. Defendant began sexually assaulting the victim in 2009 when the family lived in Florida. At the time, the victim was approximately eight years old. The family moved back to Michigan in 2010, and the assaults briefly stopped during a time when defendant was rarely able to be alone with the child. However, when the victim's mother began working late afternoons and nights in late 2010 or early 2011, the assaults resumed.

## II. CHALLENGE TO JURY INSTRUCTIONS

Defendant first argues that by providing different instructions to the jury during defendant's second trial[1], defendant's Fifth Amendment right to advance notice of the charges

---

[1] Defendant was previously tried and acquitted of two counts of first-degree criminal sexual conduct (CSC I), and the jury was unable to reach a unanimous verdict on a third count of CSC

-1-

was violated. Further, defendant argues that the changed jury instruction violated his right to a unanimous verdict. We disagree.

Initially, we note that defendant expressly approved the jury instructions on the record during the second trial. By expressly approving the jury instructions on the record, defendant has "waived any objection to the erroneous instruction[ ], and there is no error to review. *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). "A defendant may not waive objection to an issue before the trial court and then raise the issue as an error on appeal." *People v Aldrich*, 246 Mich App 101, 111; 631 NW2d 67 (2001). To do so would allow defendant and his defense counsel to "harbor error at trial and then use that error as an appellate parachute. . . ." *Kowalski*, 489 Mich at 505 (citation omitted). Defendant waived this issue through repeated approval of the jury instructions at trial.

Even if defendant had not waived this issue, he nonetheless fails to establish that the jury instructions actually given warrant reversal. We review unpreserved claims of instructional error for plain error affecting substantial rights. *Aldrich*, 246 Mich App at 124-125. In determining whether error occurred, a reviewing court must review jury instructions in context rather than reviewing individual instructions. *Kowalski*, 489 Mich at 501. "Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Aldrich*, 246 Mich App at 124.

Defendant's argument that the jury instruction violated his right to fair notice of the charges against him lacks merit. Before the start of the second trial, the prosecution filed an amended information which stated the crime for which defendant was charged and referenced the applicable statute. Specifically, defendant was charged with CSC II under MCL 750.520c. MCL 750.520c(1) provides that a "person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person . . ." and provides circumstances under which an act is considered CSC II. MCL 750.520a(q) goes on to define "sexual contact" as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts. . . ." MCL 750.520a(f) defines intimate parts as including "the primary genital area, groin, inner thigh, buttock, or breast of a human being." At the second trial, the trial court gave the following instruction to the jury that to find defendant guilty of CSC II, they must find beyond a reasonable doubt that "the defendant intentionally touched [the victim's] genital area, buttocks, or the clothing covering that area, or make [the victim] touch his penis." Accordingly, the jury instruction given was consistent with MCL 750.520c, the statute under which defendant was charged, and which is explicitly listed on the amended information. Therefore, we conclude that defendant had plenty of advance notice of the charges, and there was no instructional error.

---

II. Accordingly, defendant was retried on the CSC II count, and was ultimately convicted. That conviction is the subject of this appeal.

Defendant also argues that the change in jury instructions between trials violated his right to a unanimous verdict because defendant was charged with one count of CSC II, but the victim testified to more than one occasion where defendant initiated sexual contact. Therefore, according to defendant, there was "no way to know not only which act was proven beyond a reasonable doubt but whether the jury agreed on any one act at all . . . ." However, in *People v Cooks*, 446 Mich 503, 512-513; 521 NW2d 275 (1994), our Supreme Court held that "where materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice[,]" and that jurors need not unanimously agree about which specific acts occurred. Here, the victim's testimony described the same repeated pattern of sexual contact: defendant and the victim would lie on their sides with the victim's back to defendant; defendant would rub his penis against the victim's back and buttocks; defendant would tell the victim to remove her underwear; defendant would set the victim on top of him and then move the victim's body back and forth until "sperm came out." Accordingly, we conclude that a general unanimity instruction was sufficient.

Finally, defendant makes a cursory, alternative ineffective assistance of counsel argument. However, defendant failed to raise ineffective assistance of counsel as an issue in his statement of the question presented. Therefore this argument is abandoned, and we decline to address it. MCR 7.212(C)(5); *People v Unger (On Remand)*, 278 Mich App 210, 262; 749 NW2d 272 (2008).

### III. OTHER ACTS EVIDENCE

Second, defendant argues that the trial court abused its discretion by admitting evidence of defendant's 1994 fourth-degree criminal sexual conduct (CSC IV) conviction. At that time, defendant pleaded no contest to having a sexual relationship with his then 14-year-old sister-in-law. Defendant argues that admission of this conviction under MCL 768.27a was unfairly prejudicial. We disagree.

We review a trial court's admission of other-acts evidence for an abuse of discretion. *People v Kelly*, 317 Mich App 637, 643; 895 NW2d 230 (2016). "A trial court's decision is an abuse of discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "[P]reliminary questions of law surrounding the admission of evidence, such as whether a rule of evidence bars admitting it," are reviewed de novo. *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," even if the evidence at issue is relevant. MRE 404(b)(1). However, contrary to the aforementioned general rule, MCL 768.27a specifically permits evidence of a defendant's previous sexual misconduct against a minor. *People v Solloway*, 316 Mich App 174, 193; 891 NW2d 255 (2016). MCL 768.27a(1) provides, in relevant part:

Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense[2] against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

CSC II and CSC IV are included in the definition of "listed offense." MCL 768.27a(2)(a); MCL 28.722(s)(*v*); MCL 28.722(u)(*x*).

However, even if evidence is admissible under MCL 768.27a, it remains subject to MRE 403, and may be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012). When applying MRE 403 to evidence under MCL 768.27a, trial courts "must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. Factors to consider when determining whether introduction of evidence would be unfairly prejudicial include:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

This list is not exhaustive. *Id*. at 488.

Because defendant's 1994 conviction was offered under MCL 768.27a, the probative value of the conviction is to be given more weight. Although the incidents are 20 years apart, the accusations are similar: that defendant initiated sexual contact with a female family member under the age of 16. Accordingly, we conclude that the trial court did not abuse its discretion in admitting defendant's 1994 conviction for CSC IV. Defendant's sexual relationship with his then 14-year-old sister-in-law was highly probative of defendant's propensity to sexually assault young, female family members, and this propensity inference weighs in favor of the evidence's admission. *Watkins*, 491 Mich at 487.

### IV. PROSECUTORIAL MISCONDUCT

Third, Defendant makes several claims of prosecutorial misconduct. We do not find any to be persuasive.

Below, defendant only objected to statements by the prosecution that he claimed vouched for the credibility of the victim's doctor. Accordingly, those claims are preserved on appeal, and are reviewed de novo "to determine whether the defendant was denied a fair and impartial trial."

---

[2] MCL 768.27a(2)(a) defines a "listed offense" as a "term as defined in section 2 of the sex offenders registration act[.]" See MCL 28.722.

*People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). All other claims of prosecutorial misconduct are unpreserved, and therefore reviewed for plain error affecting defendant's substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., it affected the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). No error will be found if any prejudice could have been alleviated by a curative instruction. *Bennett*, 290 Mich App at 476.

"[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Bennett*, 290 Mich App at 475. This Court reviews the prosecutor's statements in context to "determine whether the defendant was denied a fair and impartial trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). The prosecutor's statements "are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Prosecutors are generally given great latitude regarding their arguments, and are "free to argue the evidence and reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

Defendant first argues that the prosecutor "attempted to diminish her burden of proof" as early as voir dire, by telling jurors that "she does not have to convict the [d]efendant upon less than 100% of the proof," and that the jury can only acquit defendant if they have a "great big doubt" regarding his guilt. However, defendant mischaracterizes the prosecutor's statements. When viewed in context, the prosecutor stated that she did not need to prove the case "100 percent," which is an accurate statement of the law. Rather, the prosecutor need only prove the case beyond a reasonable doubt. Further, we note that it was a juror, not the prosecutor, who remarked that a jury could only acquit a defendant when there is "great big doubt." In response to that juror, the prosecutor reiterated that her burden of proof was beyond a reasonable doubt. When viewed in context, we find no error with the prosecutor's comments.

Second, defendant argues that the prosecutor erroneously suggested that defendant's silence could be used against him as an indication of his guilt. Obviously, this statement is false; the United States Constitution assures that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const Am V. However, because defendant failed to raise a contemporaneous objection, and because it is likely that "a timely objection and curative instruction could have alleviated any prejudicial effect[,]" the prosecutor's erroneous statement does not provide a basis for reversal. *Bennett*, 290 Mich App at 476.

Third, defendant argues that the prosecutor "inexplicably blurted out during a cross examination of one of her witnesses 'the [d]efendant is testifying.' " However, defendant fails to cite any authority in support of his argument that this constitutes prosecutorial misconduct. See *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009), where this Court concluded that where a defendant fails to provide a factual or legal basis to support his claim, he has abandoned his argument. Regardless, given the insignificance of this statement, it is likely that "a timely objection and curative instruction could have alleviated any prejudicial effect." See *Unger*, 278 Mich App at 237-238.

Fourth, defendant argues that the prosecution twice "urged the jurors not to read certain parts of the judge's instructions in the jury room." Again, defendant mischaracterizes the prosecutor's statements. In context, it is clear that the prosecutor was instructing the jury not to read along with her while she was explaining the instructions to them. Rather, the jury should listen to her argument now, as they would have an opportunity during deliberations to review the instructions again. The prosecutor also told the jury, "[O]nce you get in there, break it down sentence for sentence." Accordingly, these statements do not provide a basis for reversal.

Fifth, defendant claims that the prosecutor "argued improper profile evidence." However, the page of the transcript to which defendant refers does not appear to contain an argument related to criminal profiling. Regardless, defendant again fails to cite authority in support of his position that any such statements constituted prosecutorial misconduct, and he has therefore abandoned this issue. *Waclawski*, 286 Mich App at 679. Moreover, defendant does not explain how he was prejudiced by the statements, *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001), or how a curative instruction would not have cured any prejudicial effect. *Unger*, 278 Mich App at 237-238.

Sixth, defendant argues that the prosecutor "argu[ed] facts not of record" when she called defendant a pedophile. Defendant states that this is not accurate because "[a] pedophile is one who is sexually attracted to pre-teens" and defendant was tried for a sexual assault that occurred "with an adolescent girl." Although it was likely possible for the prosecutor to avoid name calling, there was ample testimony that defendant assaulted the victim when she was a preteen and "the prosecutor may argue reasonable inferences from the evidence. Regardless, the comment did not deprive defendant of a fair and impartial trial, and a curative instruction would have cured any prejudice. *Bennett*, 290 Mich App at 476.

Seventh, defendant claims that the prosecutor impermissibly allowed the victim's doctor and the victim's school counselor to vouch for her credibility. However, based on our review of the lower court record, the portion of the transcript that defendant cites regarding the doctor's testimony does not include any statements vouching for the victim's credibility. Instead, the prosecutor reiterates the doctor's testimony that her findings were consistent with what the victim reported. Similarly, the school counselor's testimony does not include any statements by the prosecutor that she believed the counselor or that she had any special knowledge about the truthfulness of his testimony. *Bennett*, 290 Mich App at 478. Again, we find no error.

Eighth, defendant argues that the prosecution "frequently denigrated defense counsel and the role of defense lawyers generally." Defendant points to a statement that defense counsel was "going to try to spin the evidence." Defendant also argues that the prosecution "repeatedly argued to the jury that defense counsel was trying to deliberately mislead them." Defendant cites a line in which the prosecutor argued that defense counsel was "trying to make it look like" the victim and her mother "couldn't keep their dates straight." Defendant also cites a line in which the prosecutor stated, "But again, it's done—it's done to mislead a jury. He's a defense attorney. That's what he does. He tries to prove that his client is innocent." When viewed in context, we conclude that these statements did, in fact, exceed the bounds of proper argument. See *Unger*, 278 Mich App at 238. It was improper to suggest that defense counsel was attempting to distract the jury from the truth. See *id*. However, the trial court instructed the jury that the attorneys' statements and arguments were not evidence, we presume juries follow their instructions, *People*

*v Bruner*, 501 Mich 220, 228; 912 NW2d 514 (2018), and a "timely objection and curative instruction could have alleviated any prejudicial effect of the improper prosecutorial statement." *Unger*, 278 Mich App at 238.

Ninth, defendant claims that the prosecutor twice stated that defense counsel was "making up facts." Only one of the transcript pages to which defendant refers contains any statement regarding "making up facts." During closing, defense counsel stated that it was "common sense" that the victim and her mother would have talked before giving testimony. The prosecutor objected because the witnesses testified that they did not do so. The prosecutor argued, "closing arguments can be an argument or theory, but it has to be about facts, not just things that you're—defense is making up." While it would normally be improper for a prosecutor to state that defense counsel was "making up facts," the context of this remark shows that this statement was an accurate response to defense counsel arguing facts that were not in evidence. Accordingly, although this statement may have been improper in a different context, it did not constitute prosecutorial misconduct here. *Watson*, 245 Mich App at 593; *Unger*, 278 Mich App at 238.

Tenth, defendant argues that the prosecution implied that defense counsel did not want her to call an expert witness because he "knew how damaging it would be" and "implied that counsel deliberately asked the witness an improper question." Defendant fails to cite any authority in support of this position or explain how this constituted prosecutorial misconduct, and he has therefore abandoned this issue. See *Waclawski*, 286 Mich App at 679. Regardless, these comments were brief and unlikely to distract the jury from the evidence. *Unger*, 278 Mich App at 237. Defendant did not explain how he was prejudiced by these statements, *Watson*, 245 Mich App at 587, or how a curative instruction would not have cured any prejudicial effect, *Unger*, 278 Mich App at 237-238. Accordingly, he has not established prosecutorial misconduct on this basis.

Finally, defendant argues that defense counsel was attempting "to try defendant on his bad character" through introducing inadmissible and inflammatory evidence about physical assaults by defendant on the victim's mother. Plaintiff correctly argues that this is "not really a claim of prosecutor error but about the admission of evidence." Defendant fails to cite caselaw or explain how this constituted prosecutorial misconduct, and he has therefore abandoned this issue. *Waclawski*, 286 Mich App at 679. Regardless, a prosecutor's good-faith effort to admit evidence cannot be the basis of a finding of prosecutorial misconduct. *Abraham*, 256 Mich App at 278.

Defendant also argues that the cumulative effect of these errors denied him a fair trial. However, since the only errors were the prosecutor's statements about defense counsel trying to "spin" the evidence or mislead the jury, and those errors were cured by jury instructions, there can be no cumulative effect warranting reversal. See *Unger*, 278 Mich App at 258.

Defendant also makes the cursory argument that failure to object to the assault evidence "constituted ineffective assistance plain from the record with no need for a *Ginther* hearing." We conclude that this claim of ineffective assistance of counsel is abandoned, given defendant's failure to raise this issue in his statement of the questions presented. MCR 7.212(C)(5); *Unger*, 278 Mich App at 262. We therefore decline to address it.

-7-

## V. DEFENDANT'S RIGHT TO TESTIFY

Next, defendant argues that he was denied his right to testify when the trial court did not inquire on the record whether defendant intended to waive this right. We disagree.

Defendant did not preserve this issue by raising an objection at a time when the trial court had an opportunity to correct the error. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006) (quotation marks and citation omitted). We therefore review this claim for plain error affecting defendant's substantial rights. *Id*. at 278.

A criminal defendant has a Fifth Amendment right to testify in his or her defense. *Rock v Arkansas*, 483 US 44, 51-52; 107 S Ct 2704; 97 L Ed 2d 37 (1987). Michigan law affirms this principle. *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004). However, "there is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify." *People v Harris*, 190 Mich App 652, 661; 476 NW2d 767 (1991). Additionally, the trial court has no obligation to advise a defendant of the right to testify, nor is it obligated to determine whether waiver of the right to testify was knowing and intelligent. *Id*. at 661-662. Accordingly, defendant's claim is without merit.

## VI. COURT COSTS

Finally, defendant argues that the trial court erred when it failed to state a factual basis for the imposition of $1,100 in court costs. We agree.

Because defendant failed to preserve this issue, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

In this case, the trial court ordered defendant to pay $1,100 for "court costs." However, the court failed to articulate a basis for the court costs ordered. "[C]ourts may impose costs in criminal cases only where such costs are authorized by statute." *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014). MCL 769.1k(1)(b)(*iii*) permits a trial court to impose costs as follows:

> (1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred by statute or sentencing is delayed by statute:
>
> * * *
>
> (b) The court may impose any or all of the following:
>
> * * *
>
> (*iii*) Until October 17, 2020, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

-8-

(A) Salaries and benefits for relevant court personnel,

(B) Goods and services necessary for operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities.[3]

MCL 769.1k(1)(b)(*iii*) gives trial courts the statutory authority to assess court costs, so long as such costs are "reasonably related to the actual costs incurred." See also *People v Konopka*, 309 Mich App 345, 357; 869 NW2d 651 (2015). In *Konopka*, this Court held that

> although the costs imposed in this case need not be separately calculated . . . the trial court did not establish a factual basis . . . for the costs imposed . . . . [W]ithout a factual basis for the costs imposed, we cannot determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii*). [*Konopka*, 309 Mich App at 359-360.]

Because defendant specifically challenges the lack of reasoning for the court costs imposed, remand is appropriate for the trial court to "establish a factual basis for the . . . costs imposed under MCL 769.1k(1)(b)(*iii*), or to alter that figure, if appropriate." *Id*. at 360.

We affirm defendant's conviction and sentence, but remand to the trial court to articulate a factual basis for the court costs. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Michael F. Gadola

---

[3] At the time defendant was sentenced, a prior version of MCL 769.1k(1)(b)(*iii*) covered all "fines costs and assessments ordered" under this statute. See *People v Konopka*, 309 Mich App 345, 357; 869 NW2d 651 (2015), which provides that the prior version of MCL 769.1k(1)(b)(*iii*) applied to all fines and costs ordered through October 17, 2017. However, on June 30, 2017, approximately three months before defendant was sentenced, an amendment to MCL 769.1k(1)(b)(*iii*) that extended the applicability of 769.1k(1)(b)(*iii*) to October 17, 2020 took effect. See 769.1k(1)(b)(*iii*), as amended by 2017 PA 64. However, the language of the statute otherwise remains virtually unchanged, and does not affect our analysis.